13320

MEBANE v. TAYLOR

(162 S. E., 65)

*Messrs. W. G. Sirrine* and *Bowen & Bryson,* for appellant,

*Messrs. Gaston, Hamilton & Gaston* and *C. G. Wyche,* for respondent,

January 7, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Plaintiff, respondent here, brings this action seeking to recover of the defendant, appellant, the sum of $2,698.92, for which he alleges defendant became indebted to him in this wise: He lent to the defendant 150 shares of the capital stock of the Republic Cotton Mills, situated at Great Falls, S. C., to be used by defendant as collateral to a note which he gave for the purchase price of another 150 shares of the

capital stock of the same mills. That, at the time the loan was made, on or about February 19, 1924, defendant gave to plaintiff a written agreement by which he stipulated and agreed as follows: "My understanding is that I in no way acquire any rights or ownership in the 150 shares of stock above referred to, which is simply loaned to me for the purpose of collateral on this note, and is to be returned to you free of all obligations on demand." That, notwithstanding the written agreement, defendant did incumber the stock by pledging it as collateral to the Bank of Great Falls as security for his individual note in the sum of $2,698.92. That about July 15, 1927, plaintiff sold his stock, and in order to get possession of it he was obliged to pay to the bank the sum of $2,698.92 for which defendant had pledged it. For this amount and interest, he asked judgment.

The defendant, in his answer to the complaint, went into minute details of the transactions out of which this litigation arose. So much of the answer as is necessary to the determination of the issues made by this appeal is condensed in the following statement: Defendant alleges: That he was approached by plaintiff with a proposition that defendant purchase 150 shares of the stock of Dever Little, in Republic Cotton Mills, who was severing his connection with the mills; plaintiff was then president of these mills and defendant was superintendent of one of them. When defendant replied to the proposition that he was not financially able to make the purchase, the plaintiff offered to lend him 150 shares of his stock to be used along with the 150 shares to be purchased, as collateral security to a note for the purchase price of the stock, which note plaintiff would negotiate in New York. This arrangement was consummated, and the note was executed in the sum of $22,125.00, at the National Bank of Commerce of New York. As an inducement to purchase the stock, plaintiff assured defendant that he could pay for it out of the dividends, bonuses, and salary which he would get. That defendant did not then know that plaintiff

had used of the money of the mills, for his own purposes, large sums, and that an audit of the books was threatened to be made by Dever Little, and that plaintiff desired to get Little out of the mills. That defendant carried the note till July, 1927, when plaintiff served his connection with the mills, at which time the note was in the Bank of Great Falls of which plaintiff was president. That he paid large sums in interest on the note; that he received no bonuses, and only $225.00 in one dividend. That in July, 1927, when plaintiff was compelled to settle with the Duke interests, the virtual owners of the mills, and turn over to them all of his stock in the mills, Hal Mebane, the brother and agent of plaintiff, came to defendant and asked that he release the 150 shares of stock of R. S. Mebane and also the 150 shares which he held in his own name; that defendant told him that the price at which R. S. Mebane was forced to sell would not let defendant out. Thereupon, it was agreed by Hal Mebane as agent for R. S. Mebane that the latter would, in addition to paying the stock note, pay defendant's note for $2,698.92 for which the stock was also pledged.

Plaintiff denied that Hal Mebane was his agent, or that he was authorized to make such agreement.

At the conclusion of all the evidence the presiding Judge directed a verdict for plaintiff on the ground that there was no proof that the written agreement by which defendant was bound to return R. S. Mebane's stock on demand, free of obligations, had been waived.

Ancillary to this question was the issue whether there was any evidence to go to the jury to show that Hal Mebane was the agent of plaintiff in the negotiations with defendant for the return of the stock.

It is conceded that defendant signed the written agreement by which he bound himself to return to plaintiff on demand the stock lent him, free of obligations. If there is satisfactory evidence then that plaintiff made demand for his stock, with which demand defendant was unable to comply

because he had incumbered the stock with an obligation of his own, and that in order to secure the stock plaintiff was compelled to pay off this personal obligation of defendant, then, if nothing else appeared, it would seem that plaintiff would be entitled to recover of the defendant the sum so paid by him.

But defendant sets up in his answer that this situation was changed when, in July, 1927, Hal Mebane, as the agent of R. S. Mebane, made demand on him for the stock. He avers, and offers testimony tending to support the contention, that Hal Mebane agreed with him that, if he would also release to R. S. Mebane the 150 shares of stock standing in the defendant's name, R. S. Mebane would pay the personal note of defendant held by the Bank of Great Falls and secured by the pledge of this stock as well as that lent to defendant by R. S. Mebane. This presents three questions for our determination: Was Hal Mebane, in his dealings with defendant, acting as agent of R. S. Mebane? If he was not the agent of R. S. Mebane, did the latter accept and ratify his acts? Did the parties modify the written agreement, and substitute another in its stead?

More properly speaking, our inquiry should be, Is there any competent evidence to support these contentions of defendant?

When defendant was on the stand he testified that Hal Mebane came to him and made demand for the stock which R. S. Mebane had lent to defendant, and also requested him to release the stock which stood in defendant's name; that Hal Mebane said he was acting for his brother, R. S. Mebane. This testimony was objected to on the ground that agency could not be proved by the declaration of the agent. The presiding Judge recognized the force of the objection, but permitted the testimony to stand with leave to defendant to connect it, or prove the agency by other testimony or circumstances. On cross examination, defendant said: * * * "When demand was made on

me for this I told his brother just' what I have testified to, the price at which he was being forced to sell would not let me out and that he would have to take up my notes and pay the difference, and his brother, to my understanding, agreed to this transaction and I understood that settled the entire matter and relieved me from all future obligations." This was objected to, but was not struck out. It is fundamental that agency may not be proved by the declaration of the agent alone. But the declarations of the agent may be considered along with the facts and circumstances which tend to establish agency. The principle is clearly stated by the Court of Appeals of Georgia in the case of *Smith v. Hendricks,* 43 Ga. App., 361, 158 S. E., 764, 765:

"Declarations of an alleged agent are not by themselves admissible to prove agency, but it may be also established by proving circumstances, apparent relations, and the conduct of the parties; and where the extraneous circumstances independently of and without regard to the declarations of the agent himself, clearly tend to establish the fact of his agency, his declarations, though inadmissible if standing alone, may, as a part of the *res gestae* of the transaction, be considered"—citing *Collier v. Schoenberg,* 26 Ga. App., 496, 106 S. E., 581; *Render v. Hill Bros.,* 30 Ga. App., 239, 117 S. E., 258.

"Agency, knowledge and consent may be established not only by direct evidence, but by circumstantial evidence as well; and the acts and declarations of an alleged agent may be considered with other competent proof of the agency for the purpose of establishing agency." *General Motors Corp. v. Chestnut,* 158 S. C., 46, 155 S. E., 231, 232.

Ratification of agency is a question of fact for the jury, and if there was any competent evidence as to such issues the trial Court was right in submitting it to the jury. *Hopkins v. Smathers,* 114 S. C., 488, 104 S. E., 30.

"Ratification as it relates to the law of agency may be defined as the express or implied adoption and confirmation by one person of an act or contract performed or entered

into in his behalf by another who at the time assumed to act as his agent. * * *" 2 C. J., page 467, § 76.

There was evidence that R. S. Mebane did the things ■ which defendant testifies Hal Mebane engaged for him to do. He paid off the notes. He received the stock from defendant through Hal Mebane. There is evidence that R. S. Mebane was in financial troubles, which made it necessary for him to get possession of all the stock he could in order to perfect his engagement with the Duke interests.

We think there was sufficient evidence of agency and ratification to take the case to the jury on that issue.

It follows then that the case should have gone to the jury on the issue whether Hal Mebane, acting for R. S. Mebane, abrogated the written agreement by which defendant obligated himself to return to R. S. Mebane the 150 shares of stock which were lent him, and established therefor the parol agreement that, if defendant would release all the stocks, R. S. Mebane would pay both of defendant's notes.

It was competent for the parties to change, modify, ■ or supersede the written agreement by an oral one.

"The parties had a perfect right to change the terms of the contract, and when they agreed that, instead of the stock delivered November 1st, Auld would take the note of Searles for $500.00, and that agreement was consummated, they made a valid amendment to the original contract, and it became as if that provision had formed a part of it." *Searles v. Audd,* 118 S. C., 434, 111 S. E., 785, 786.

"Parties to a written contract, after it has been executed and entered upon, may modify it. There is no need to cite authority for that postulate; the words of Lord Drenman thereabout, as quoted by Wigmore, Vol. 4, p. 3442, are sufficient." *Fass v. Ins. Co.,* 105 S. C., 120, 89 S. E., 558, 562.

"It is entirely competent for the parties to a contract to modify or waive their rights under it and engraft new terms upon it. * * *

"It is true that a simple contract completely reduced to writing cannot be changed or modified by parol evidence of what was said or done by the parties at the time it was made, because the parties agreed to put the contract in writing and to make the writing part and evidence thereof. The very purpose of the writing is to render the agreement more certain, and to exclude parol evidence of it. *Nevertheless, by the rules of the common law it is competent for the parties to a simple contract in writing before any breach of its provisions, either altogether to waive, dissolve, or abandon it, or vary or qualify its terms, and thus make a new one.*" (Italics added.) 6 R. C. L., page 914, § 299.

"A written contract may, in the absence of statutory provisions requiring a writing, be modified by a subsequent oral agreement. * * *

"A written contract may be modified by the parties thereto in any manner they choose, notwithstanding agreement prohibiting its alteration except in a particular manner." 13 C. J., page 593, § 609; page 594, § 611.

Inasmuch as this case must go back to the Circuit Court, we have refrained from discussing the evidence further than is necessary to show that there was evidence which required that the case be submitted to the jury.

The order appealed from is reversed. The case is remanded to the Circuit Court for trial.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Carter concur.

Mr. Justice Cothran did not participate on account of illness.