## 17485

J. F. EVATT, Plaintiff-Respondent, v. K. H. CAMPBELL, Defendant-Appellant

(106 S. E. (2d) 447)

*J. Alex. Neely, Jr., Esq.,* of Anderson, *for Appellant,*

*Messrs. Watkins, Vandiver & Freeman,* of Anderson, *for Respondent,*

January 2, 1959.

Moss, Justice.

This action was brought by J. F. Evatt, the respondent herein, against K. H. Campbell, the appellant herein, to recover the sum of Two Thousand Nine Hundred & 00/100 ($2,900.00) Dollars, being the balance alleged to be due on a salary contract. The complaint alleges that the appellant employed the respondent on June 18, 1953 for a period ending February 28, 1954, and agreed to pay the respondent for services rendered the sum of Three Thousand Six Hundred & 00/100 ($3,600.00) Dollars. The respondent asserts the performance of services and the appellant paid him only the sum of Seven Hundred & 00/100 ($700.00) Dollars, leaving the appellant indebted to him for the balance of Two Thousand Nine Hundred & 00/100 ($2,900.00) Dollars.

The appellant duly answered the complaint and denied the salary contract. The appellant also set up a counterclaim alleging that respondent and appellant were partners under a written agreement and demanded an accounting and for judgment against the respondent on the accounting.

Upon motion of the appellant, this case was referred to a Special Referee to take and report the testimony, together with his findings of fact and conclusions of law. The Special Referee, after extended references and the taking of much testimony, filed a report finding the material allegations of the complaint to be true, and that the respondent was entitled to judgment against the appellant for the sum of Two Thousand Nine Hundred & 00/100 ($2,900.00) Dollars. The appellant duly excepted to the report of the Special Referee and, thereafter, the Honorable J. B. Pruitt, Resident Judge of the Tenth Circuit, issued an order concurring in the findings of fact made by the Special Referee and affirming the said report.

It is admitted by the parties to this action that on March 11, 1953, they entered into a partnership agreement which was to continue until February 28, 1954. The respondent contends that the said partnership agreement was terminated by mutual consent on or about June 18, 1953. The respondent also contends that upon the termination of the said partnership agreement by mutual consent, that the appellant agreed and promised to pay to him the sum of Three Thousand Six Hundred & 00/100 ($3,600.00) Dollars for his services as bookkeeper, salesman, office manager, and rent collector, and that the said agreement superseded the partnership agreement between the parties. The appellant denied that the partnership contract was terminated as contended by the respondent, and alleges that his only relationship with the respondent was that of a partner, and that the respondent should account to him for one-half of the losses sustained by the partnership. The pleadings admit that a partnership relation existed between the parties from March 11, 1953 until June 18, 1953. The pleadings put in issue whether or not the respondent was a partner or an employee for the latter part of the partnership contract period.

The respondent testified that on June 18, 1953, he entered into an oral agreement with the appellant to terminate the partnership contract because they did not have sufficient op-

erating capital. He testified also that "I was getting ready to leave, and Mr. Campbell told me that if I would stay on he would give me Three Thousand Six Hundred & 00/100 ($3,600.00) Dollars. So I stayed on. In other words, we didn't have no operating capital—that is the reason this partnership wasn't carried out." He further testified "Mr. Campbell's agreement—oral agreement—with me was that if I would stay on and work—collect his rent and look after his car lot—that he would pay me the salary I was getting at Colonial Ice Company, which was Three Thousand Six Hundred & 00/100 ($3,600.00) Dollars." He further testified that this arrangement was to continue until February, 1954. The appellant, in his testimony, vigorously denied the foregoing agreement. The appellant objected to the testimony of the respondent and asserts that the Special Referee and the Circuit Judge were in error in finding that the written partnership agreement had been terminated by an oral agreement and converted to a salary agreement when "the partnership agreement was in writing and provided for the termination to be in writing."

The partnership agreement provides: "The partnership is to continue until February 28, 1954 and is to continue from year to year thereafter unless one partner gives notice in writing thirty (30) days before the close of a year that he desires to withdraw from the partnership."

The partnership contract upon which the appellant relies does not provide that its modification or termination by mutual consent be in writing. The provision above quoted provides the means whereby one partner may terminate the agreement without the consent of the other. We are concerned here with the question of whether a written contract may be changed, terminated or superseded by a subsequent parol agreement supported by a valuable consideration. It is clear, from the authorities hereinafter cited, that parties to a contract may supersede a written agreement by an oral one.

In the case of *Mebane v. Taylor,* 164 S. C. 87, 162 S. E. 65, 67, it was said:

"It was competent for the parties to change, modify, or supersede the written agreement by an oral one.

" 'The parties had a perfect right to change the terms of the contract, and when they agreed that, instead of the stock delivered November 1st, Auld would take the note of Searles for $500.00, and that agreement was consummated, they made a valid amendment to the original contract, and it became as if that provision had formed a part of it.' *Searles v. Auld,* 118 S. C. [430] 434, 111 S. E. 785, 786.

" 'Parties to a written contract, after it has been executed and entered upon, may modify it. There is no need to cite authority for that postulate; the words of Lord Drenman thereabout, as quoted by Wigmore, Vol. 4, p. 3442, are sufficient.' *Fass v. [South Atlantic Life] Ins. Co.,* 105 S. C. [107] 120, 89 S. E. 558, 562.

" 'It is entirely competent for the parties to a contract to modify or waive their rights under it and engraft new terms upon it. * * *

" 'It is true that a simple contract completely reduced to writing cannot be changed or modified by parol evidence of what was said or done by the parties at the time it was made, because the parties agree to put the contract in writing and to make the writing part, and evidence thereof. The very purpose of the writing is to render the agreement more certain, and to exclude parol evidence of it. Nevertheless, by the rules of the common law it is competent for the parties to a simple contract in writing before any breach of its provisions, either altogether to waive, dissolve, or abandon it, or vary or qualify its terms, and thus make a new one.' 6 R. C. L., page 914, § 299.

" 'A written contract may in the absence of statutory provisions requiring a writing, be modified by a subsequent oral agreement. * * *

" 'A written contract may be modified by the parties thereto in any manner they choose, notwithstanding, agreement

prohibiting its alteration except in a particular manner.' 13 C. J., page 593, § 609; page 594, § 611."

In the case of *American Oil Co. v. Cox*, 182 S. C. 419, 189 S. E. 660, 662, this Court said:

"The appellants interposed as one of their defenses that the written lease had been superseded or altered by a subsequent oral agreement entered into between the parties, supported by a valuable consideration, but testimony offered to establish the alleged oral agreement was excluded by the magistrate upon motion of the respondent. Because of this adverse ruling the defendants assign error. Unquestionably, it is true that a written contract may be changed by a subsequent parol agreement, supported by a valuable consideration, and evidence is admissible in proof of such parol agreement. * * *"

The appellant asserts that there was no consideration to support the verbal agreement substituted for the written partnership contract. The question to be determined is whether there was a valid legal consideration to support the termination of the partnership agreement and the making of a substituted contract therefor.

In the case of *Rabon v. State Finance Corporation*, 203 S. C. 183, 26 S. E. (2d) 501, 502 this Court said:

"It has been the established law of South Carolina since the commencement of its jurisprudence that a contract is an agreement on sufficient consideration, to do or not do a particular thing. Therefore, the consideration is one of the vital elements of a valid binding contract, and no contract is complete without a valid, legal consideration."

In the case of *Shayne of Miami, Inc. v. Greybow, Inc.*, 232 S. C. 161, 101 S. E. (2d) 486, 489, it was said:

"An age-old definition of consideration is, 'a benefit to the party promising, or a loss or detriment to the party to whom the promise is made.' 17 C. J. S., Contracts, § 70, p. 420. 'A long series of decisions has established the rule that a benefit to the promisor or a detriment to the promisee is sufficient

consideration for a contract.' 12 Am. Jur. 570, Contracts, Sec. 79. For the last quoted text there are cited in the footnote our leading cases of *Ferrell v. Scott*, 2 Speers 344, 42 Am. Dec. 371, and *Furman University v. Waller*, 124 S. C. 68, 117 S. E. 356, 33 A. L. R. 615."

It appears from the evidence that the respondent, ██ when there was a termination of the partnership agreement with the appellant, was planning to take other employment. The respondent testified that he was manager of Colonial Ice Company at the time he entered into the partnership agreement with the appellant. He aslso testified that he was offered a position with the company he now represents, but that the appellant told him he would give him Three Thousand Six Hundred & 00/100 ($3,600.00) Dollars if he would stay on and help him. This detriment to the respondent is sufficient consideration for the contract of employment. *Theodore v. Mozie*, 230 S. C. 216, 95 S. E. (2d) 173. Mutual promises also constitute a good consideration. *Callaham v. Ridgeway*, 138 S. C. 10, 135 S. E. 646.

The appellant asserts that the Special Referee and the trial Judge committed error in finding that the partnership agreement had been terminated and that the respondent had made a partnership accounting.

The testimony of the respondent was to the effect ██ that the partnership agreement had been terminated and that he entered into an employer-employee relationship with the appellant. The appellant specifically denied this testimony. It became, therefore, a question of fact for determination upon the trial of the case before the Special Referee. The Special Referee has found as a fact that the partnership agreement was terminated and that the respondent remained as an employee of the appellant on the terms heretofore set forth. The Circuit Judge has concurred in this finding of fact. The appellant alleges that the respondent is not worthy of belief because of various discrepancies in his testimony. It is well here to observe that the Special Referee saw the witnesses, heard the testimony delivered from the

stand and had the benefit of that personal observation of and contact with the parties, which is of peculiar value in arriving at a correct result in a case of this kind. *Meyerson v. Malinow,* 231 S. C. 14, 97 S. E. (2d) 88. Credibility of the witnesses, of necessity, must be left with the Special Referee.

The record shows, with reference to the accounting by the respondent, that he employed an accountant who prepared and submitted a balance sheet and a profit and loss statement. It is further in the testimony that the books of the business were set up originally by an accountant, and that the appellant stated to the respondent that he would get a bookkeeper, but this was never done. The Special Referee sums up the situation, with reference to the accounting, in the following language:

"Many aspects of this situation make it most difficult to find what really constitute the facts of the case. The Defendant can neither read nor write. Three separate bank accounts were involved. In addition to the used car activities, these accounts were also used sometimes in connection with certain rental property and farm operations of the Defendant. Apparently some of the money used for these purposes was reimbursed and some was not. As the Plaintiff put it, he was to 'put down the pay-outs and the come-ins and the balance.' No orthodox bookkeeping methods were used, nor was the Plaintiff capable of properly keeping books. The records were kept in a slipshod, informal manner which makes it a practical impossibility to render an accurate accounting or to reconstruct the business activities during the period in question. Considering his limitations in the field of accounting, it is felt that the Plaintiff has done his best to try to render a satisfactory accounting to the Court. He employed an accountant who prepared and submitted a balance sheet and profit and loss statement. This accountant testified that he could not vouch for the accuracy or completeness of his report because of the incompleteness of the records."

The Special Referee accepted the accounting made by the respondent. This accounting was prepared by one Garrison, who had been in the accounting business since 1923. The accounting showed a net profit of Two Thousand Nine Hundred Thirty-six & 58/100 ($2,936.58) Dollars. The accountant testified that he had made the report as best he could but he did not vouch for the accuracy or completeness of same because he did not have complete records. The appellant insists that there should be accepted a profit and loss statement made on a net worth basis, which shows a loss to the partnership. In this connection it should be pointed out that the appraisal of the inventory and the receivables on hand, upon which the net worth statement was based, was made on May 4, 1954, after the appellant had requested the respondent to join with him in appointing appraisers to fix the value of the partnership assets. The respondent, in response to such request, advised the appellant that he would have no part in fixing said valuation as he had no interest in the partnership. The Special Referee did not accept the statement of the appellant prepared on the net worth basis, but approved the accounting as made by the respondent. The Special Referee's conclusions have been concurred in by the Circuit Judge.

An action for an accounting is equitable in nature. This being true, we are bound by the rule that in an equity case the findings of fact by a Special Referee and concurred in by the Circuit Judge are conclusive upon this Court, and will not be disturbed unless it is shown that such findings are without any evidence to support them, or are against the clear preponderance of the evidence. *Wise v. Picow,* 232 S. C. 237, 101 S. E. (2d) 651. We have carefully studied the record and find that the facts amply support the holdings of the Special Referee, and such findings of fact have been affirmed and concurred in by the Circuit Judge. We are, therefore, bound by the same.

The complaint sets forth an action at law for the recovery of a balance due upon an alleged salary contract. The order of reference directed the Special Ref-

eree to determine all issues of fact. The Special Referee has found that the respondent was entitled to recover the amount he alleged to be due for salary. This finding has been concurred in by the Circuit Judge. There is evidence to support the finding. Where an action at law is tried before a Special Referee, or a Judge, without a jury, the findings of fact have the same force and effect as the verdict of a jury, unless the trial officer has committed some error of law leading him to an erroneous conclusion, or unless the evidence is reasonably susceptible of the opposite conclusion only, his finding of fact must be accepted by this Court. *Robinson v. Carolina Casualty Ins. Co.,* 232 S. C. 268, 101 S. E. (2d) 664. There is evidence to sustain the conclusion reached by the Special Referee and the Circuit Judge upon the issue made by the complaint and denied by the answer.

The record shows that after the Special Referee had made and filed his report, and the Circuit Judge had, by order, affirmed such report, that the appellant moved before the Circuit Judge for a new trial on after discovered evidence. Attached to the notice of such motion was an affidavit by one Jones that the respondent had offered to pay him the sum of Five Hundred & 00/100 ($500.00) Dollars to testify that he had witnessed a verbal agreement between the respondent and the appellant to the effect that the partnership agreement between the parties had been terminated, and that the respondent was to work for the appellant for Seventy-five & 00/100 ($75.00) Dollars per week. It appears by affidavit of the appellant that he did not know of this evidence until after the rendition of the order by the Circuit Judge.

It is well to state the law regulating the consideration and determination of motions for a new trial based on after discovered evidence. The rule is fully stated in the case of *McCabe v. Sloan,* 184 S. C. 158, 191 S. E. 905, 908, as follows:

"In order to warrant the granting of a new trial on the ground of newly discovered evidence, it must appear, (1) that the evidence is such as will probably change the result,

if a new trial is granted. (2) That it has been discovered since the trial. (3) That it could not have been discovered before the trial by the exercise of due diligence. (4) That it is material to the issue. (5) That it is not merely cumulative or impeaching. 20 R. C. L., 290, § 72."

The motion made by the appellant on after discovered evidence was heard by the Circuit Judge and refused on the ground that the affidavit upon which such motion was based shows that the testimony would be impeaching. He held that in order to warrant a new trial on the ground of after discovered evidence it must appear that such evidence is not merely impeaching. The Circuit Judge also held that the motion for a new trial was one addressed to his sound discretion and in the exercise of such he refused the motion.

While the respondent was on the witness stand and under cross examination by counsel for the appellant, the following questions and answers were given:

"Q. When did you first think about calling for a salary instead of the partnership? A. Mr. Campbell told me that he would pay me this salary down on Earle Street in June.

"Q. How many people did you ask to come up here and testify that they heard that conversation? A. Not anyone.

"Q. Did you get any statements from anyone? A. Mr. Bryant over there—he voluntarily said he heard Mr. Campbell tell me.

"Q. So, Mr. Bryant quit—when did he voluntarily tell you he heard that? A. He told me on two or three different occasions.

"Q. How come did he tell you? A. We were talking, and he just said he heard it.

"Q. Where were you then—the first time? A. Over on Earle Street.

"Q. How come you had to have witness then to it? A. Well, it was an oral agreement—he volunteered to be a witness to it.

"Q. You said this morning it was oral because you just thought Mr. Campbell's word was good—did you not? A. Yes, sir.

"Q. But right then and there you were discussing it with somebody—A. No, sir—he just come up.

"Q. Why would he come up and tell you he heard the conversation if you haven't talked about it? A. Well, I don't know how it came around, but he came up there and said he heard it.

"Q. You must have told him you thought you were going to have trouble—A. No, sir.

"Q. Did you subpoena him up here today? A. Yes, sir.

"Q. Did you promise him anything to come? A. No, sir—not a penny.

"Q. Who was in the office when you and Bud had this conversation? A. Bud and myself—Robert was standing there at the door.

"Q. Who else was there? A. No one.

"Q. Have you talked to anyone else about testifying for you—that they heard the conversation? A. No, sir."

We have quoted the foregoing testimony so that the record will show that the respondent was fully cross-examined as to whether he had talked to anyone about testifying in his behalf that they had heard the conversation between the respondent and the appellant by which the employment contract was made. We should point out that the witness Bryant referred to in the quoted testimony denied that he had heard any such conversation.

Is the after discovered evidence, as is contained in the affidavit of one Jones, impeaching evidence? If it is impeaching, then it cannot be the basis for a new trial.

In *Johnston v. Belk-McKnight Co. of Newberry, Inc.*, 188 S. C. 149, 198 S. E. 395, 399, this Court said:

"* * * Impeaching must mean that which is outside the evidence already given, and impeaches that evidence; it

may be by attacking the character, the motives, the integrity, or veracity of those who gave the testimony.

"Black's Law Dictionary, Third Ed., page 922, gives this definition of the word 'impeach':

" 'In the Law of Evidence—To call in question the veracity of a witness by means of evidence adduced for that purpose. The adducing of proof that a witness is unworthy of belief.' "

It is readily apparent from the affidavit heretofore referred to that the affiant Jones does not know anything about the merits of this case. It is likewise apparent that the sole purpose of offering the affiant as a witness would be to discredit the testimony of the respondent as a witness, and to contradict and impeach him as to whether or not he had talked to anyone else about testifying in the case that they had heard the conversation with reference to the agreement between the appellant and respondent.

We agree with the Circuit Judge that a new trial should not have been granted because the after discovered evidence tended merely to impeach the evidence of the respondent by disproving facts to which he has testified by proof of other inconsistent facts.

The motion for a new trial is addressed to the sound discretion of the Judge hearing it, and his refusal to grant such motion will not be interfered with by this Court unless an abuse of discretion is shown, amounting to error of law. This the appellant has failed to show. *Johnston v. Belk-McKnight Co. of Newberry, Inc., supra,* and *State v. Johnson,* 187 S. C. 439, 198 S. E. 1.

In view of the fact that we have disposed of this case upon the merits, it becomes unnecessary for us to determine whether timely notice of intention to appeal was given by the appellant.

All exceptions of the appellant are overruled and the judgment of the lower Court is affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.