18535

GULF OIL CORPORATION, Respondent, v. SOUTH CAROLINA TAX COMMISSION, Appellant

(149 S. E. (2d) 642)

*Messrs. Daniel R. McLeod, Attorney General,* and *Joe L. Allen, Jr.,* and *Joseph C. Coleman, Assistant Attorneys General,* of Columbia, *for Appellant,*

*Messrs. McKay, McKay, Black & Walker,* of Columbia, and *Gene F. Presley,* of Atlanta, Georgia, *of Counsel, for Respondent,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Joe L. Allen, Jr.* and *Joseph C. Coleman, Assistant Attorneys General,* of Columbia, *for Appellant, in Reply.*

July 19, 1966.

LIONEL K. LEGGE, Acting Associate Justice.

This appeal presents a single question, which appellant states thus: Does the excess above par value of stock distributed in a stock dividend which is trasferred from an earned surplus account to a capital account constitute dollars paid in as surplus subject to the South Carolina license or franchise tax?

Respondent, Gulf Oil Corporation, a Pennsylvania corporation qualified to do business and doing business, in South Carolina, issued in the years 1958 through 1963 stock dividends to its shareholders. The par value of the stock so issued was charged to earned surplus and added to

capital stock; and no question of its taxability is here involved. The amount by which the market value of these dividend shares exceeded their par value was transferred on the books of the corporation, in each of said years, from the earned surplus account to an account designated as "Other Capital", which was, according to the undisputed evidence, a surplus account.

In filing its returns required under Sections 65-601 *et seq.* of the 1962 Code and their antecedent Code Sections, Gulf did not include in the tax base the amounts so transferred from "earned surplus" to "other capital". The Tax Commission recomputed the tax by including said amounts in the tax base, making an additional assessment for each of the years in question, which Gulf paid under protest and for refund of which it brought this action. From a circuit court decree certifying that such additional assessments had been wrongfully collected and ought to be refunded the Commission has appealed.

Section 65-606 of the 1962 Code provides that every corporation (with exceptions not pertinent here) shall pay to the Commission "an annual license fee of one mill upon each dollar paid to the capital stock and paid in as surplus of said corporation as shown by the records of the corporation on the first day of the income year next preceding the date of filing the report" required by Section 65-602.

Section 65-607 provides that in the case of a corporation doing business both within and without this State the license fee provided for in Section 65-606 "shall be measured by a proportion of the dollars paid to the capital stock and paid in as surplus of the corporation" determined in accordance with certain ratios prescribed in other sections of the Code. It further provides that "[p]aid in surplus, for the purposes of this section, shall not include any capital surplus created by reason of a reorganization, consolidation, or merger except such surplus as may result from a decrease of capital as an incident to such reorganization, consolidation or merger."

We note at the outset that the statute does not on its face purport to base the license fee or franchise tax on surplus, in the generic sense of that word; that the parties agree that there is no real difference in meaning between the reference in both of the quoted sections to dollars "paid in as surplus" and the reference in Section 65-607 to "paid-in surplus"; and that the sole issue for determination, therefore, is whether or not the excess of the market value over the par value of the stock dividend shares, as transferred from "earned surplus" to "other capital" on the company's books, was "paid-in surplus". It is not suggested that such excess value, so long as it remained in the "earned surplus" account, was "paid-in surplus" or includable in the tax base.

The statute does not define "paid-in surplus"; and for the meaning of that term we must therefore look to its common use in the field of corporate accounting. Webster's New International Dictionary, 3rd Edition (1961), gives the following definitions:

*Paid-in surplus:* Surplus resulting from sale or exchange of capital stock at amounts in excess of par or stated value.

*Earned surplus:* The net accumulated balance of earnings of a corporation that remains after deducting losses, distributions to stockholders, and transfers to capital stock accounts and that includes appropriated surplus (as reserve for contingencies) as well as unappropriated surplus—called also retained income.

*Capital surplus:* The portion of the surplus of a business arising from sources other than earnings; all surplus other than earned surplus, usually including amounts received from sale or exchange of capital stock in excess of par or stated value, profits on resale of treasury stock, donations to capital by stockholders or others, or increment arising from revaluation of fixed or other assets.

The several classifications of surplus are also noted in *Edwards v. Douglas,* 269 U. S. 204, 46 S. Ct. 85, 70 L. Ed. 235, as follows:

"The surplus account represents the net assets of a corporation in excess of all liabilities including its capital stock.

This surplus may be 'paid-in surplus,' as where the stock is issued at a price above par; it may be 'earned surplus,' as where it was derived wholly from undistributed profits; or it may, among other things, represent the increase in valuation of land or other assets made upon a revaluation of the company's fixed property."

It thus appears that the characteristic of "paid-in surplus" distinguishing it from other forms of surplus is that it results from "sale", or "exchange", or "issuance at a price above par", of the corporate stock.

As before noted, the "Other Capital" account to which the excess value of the stock dividend shares are transferred was a surplus account. The transfer effected no increase in corporate assets; it was a book-keeping entry whereby retained earnings, not includable in the tax base, were transferred from one category of surplus to another. The statute in question does not expressly declare that such a transfer from one surplus account to another results in a "paid-in surplus"; and we do not think that such a legislative intent is reasonably inferable from its language.

Appellant suggests that such intent is to be inferred from the *proviso* in Section 65-607 whereby "paid-in surplus, for the purposes of this section, shall not include any capital surplus created by reason of a reorganization, consolidation, or merger except such surplus as may result from a decrease of capital as an incident to such reorganization, consolidation or merger." But we do not think that exclusion from the tax base of a capital surplus resulting from a decrease of capital incident to reorganization, consolidation or merger necessarily implies that every other capital surplus, however derived, is taxable, or that a transfer from "Earned Surplus" to "Other Capital" of excess value of shares issued as a stock dividend constitutes "paid-in surplus" within the purview of the statute.

Affirmed.

Moss, C. J., and Lewis, Bussey and Brailsford, JJ., concur.