572 S.E.2d 298

**Richard E. LEE, Respondent/Appellant,**

v.

**THERMAL ENGINEERING CORPORATION
and Willie Best, Appellants/Respondents.**

No. 3556.

Court of Appeals of South Carolina.

Heard June 5, 2002.
Decided Oct. 28, 2002.

W. Duvall Spruill, of Columbia;  for appellant-respondent(s).

Edwin Russell Jeter, of Columbia;  Richard J. Morgan, of Columbia, for respondent-appellant(s).

CURETON, J.:

Richard E. Lee sued Thermal Engineering Corp. and its founder, Willie Best (collectively, "Thermal"), asserting claims for breach of contract and violation of the Payment of Post Termination Claims to Sales Representatives Act, S.C.Code Ann. § 39–65–10 to –80 (Supp.2001).  Lee also sought punitive damages and attorney fees.  Following a bench trial, the court granted judgment to Lee. In a separate order, the court awarded Lee attorney fees and prejudgment interest, but denied Lee's request for punitive damages.  Both Thermal and Lee appeal.  We affirm in part and reverse in part.

## FACTS

Thermal manufactures curing ovens, paint booths and control panels that operate manufacturing equipment. On October 5, 1987, Thermal entered into a written agreement with Lee to serve as its sales representative in the Southeastern United States.

The agreement, which was to run from year to year, provided that Lee was to be paid on a commission basis for any orders accepted by Thermal. Either party could terminate the relationship upon six months written notice; however, the agreement would remain in force for six months after notice of termination. Upon termination of the contract, Lee was entitled to commissions for accounts he generated for a period of eight months after the termination. If an order was received from one of Lee's customers during the eight months after termination then an additional eight-month period would be in effect from the order date and would continue in effect so long as orders were received during the eight-month interval.

On March 29, 1995, Thermal sent Lee notice of termination of the contract. Lee reminded Thermal of the six-month notice provision in their contract and requested an accurate accounting of any commissions that might be due during the notice period.

Thermal disputed the application of the notice provision and advised Lee that the March 29th letter had declared their contract to be at an end. Thermal further advised Lee that if he was already working on any particular projects that "Thermal [was] willing to work with [him] on a case-by-case basis so that those efforts won't be wasted." On November 9, 1995, after a demand from Lee's attorney, Thermal paid Lee $7098.42 for the undisputed, pre-termination commissions earned prior to March 29, 1995.

Lee filed this action against Thermal seeking the balance of his post-termination commissions, plus punitive damages and attorney fees. The trial court awarded Lee a judgment of $58,465.64 for all the unpaid commissions in accordance with the notice provisions of the contract. The court's order further provided Lee was entitled to reasonable attorney fees and instructed him to submit an affidavit of attorney fees within fifteen days of receipt of the order. Following a hearing, the

court awarded Lee pre-judgment interest of $16,901.61 and attorney fees of $25,122. This appeal follows.

## LAW/ANALYSIS

### *Thermal's Appeal*

I. Oral Amendment of Contract

Thermal asserts the trial court committed reversible error in ruling the contract was orally amended because Lee never asserted in his pleadings that the written contract was modified. We believe the question of whether or not the contract was orally amended was presented to the trial court.

▇ Initially, we discuss Thermal's argument that Lee's pleadings make no claim that the contract was orally amended to include "engineered" products within its terms. Thermal argues that clearly the complaint bases Lee's right to recover on the written contract and that Lee never made a motion to amend his pleadings to assert a right to recover based on an oral modification. Notwithstanding such failures, we conclude Lee's pleadings should not preclude recovery in this case. First, we note that Thermal consistently asserted during trial that Lee was not entitled to recover because the commissions he claimed were either not based on sales personally made by him or that the sales were not of "pre-engineered" products. Thermal never asserted during trial that the pleadings limited Lee's recovery to commissions from the sale of pre-engineered products only. Having failed to object to the court's consideration of Lee's entitlement to commissions based on Lee's failure to plead a modification of the Parties agreement, Thermal is considered to have tried the issue by consent. *See Simmons v. Tuomey Reg'l Med. Ctr.*, 330 S.C. 115, 125 n. 2, 498 S.E.2d 408, 413 n. 2 (Ct.App.1998) (an issue not expressly mentioned in the complaint but tried without objection and incorporated in the trial court's order is tried by consent according to Rule 15 SCRCP); *McCurry v. Keith*, 325 S.C. 441, 447, 481 S.E.2d 166, 169 (Ct.App.1997) (issues tried by consent will be treated as if raised in the pleadings).

Secondly, even if the record on appeal could be interpreted to show Thermal raised the oral modification issue at trial, the issue must be both presented to and ruled upon by the trial

court before it will be considered on appeal. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998)("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *First Union Nat'l Bank of S.C. v. Soden,* 333 S.C. 554, 566, 511 S.E.2d 372, 378 (Ct.App.1998) ("It is a fundamental rule of law that an appellate court will affirm a ruling by a lower court if the offended party does not challenge that ruling.").

We now move to Thermal's claim that the evidence does not support the trial court's holding that the contract in issue was orally amended. "It is true that a simple contract completely reduced to writing cannot be changed or modified by parol evidence of what was said or done by the parties at the time it was made, because the parties agree to put the contract in writing and to make the writing part, and evidence thereof." *Evatt v. Campbell,* 234 S.C. 1, 6, 106 S.E.2d 447, 450 (1959) (quoting *Mebane v. Taylor,* 164 S.C. 87, 94, 162 S.E. 65, 67 (1932)). "Nevertheless, by the rules of the common law it is competent for the parties to a simple contract in writing before any breach of its provisions, either altogether to waive, dissolve, or abandon it, or vary or qualify its terms, and thus make a new one." *Id.* "A written contract may, in the absence of statutory provisions requiring a writing, be modified by a subsequent oral agreement." *Id.*

In this case, Best testified that Thermal entered into the written agreement with Lee for the purpose of securing orders for pre-engineered products so that its manufacturing division could continue production even when its engineering division was working on custom-designed items. Apparently, however, very few orders materialized that did not require the assistance of Thermal's in-house engineering division. Although Best stated he did not "know how [Lee] got changed over to the selling of other products," he acknowledged that Thermal paid Lee for all orders he solicited during the contract period at the same commission rate, regardless of whether the items were pre-engineered. Kerry Smith, Thermal's Vice President and General Manager of the Control Division also acknowledged that Lee was never refused a commission on the basis the order was not for a pre-engi-

neered product. Moreover, Smith acknowledged that he discussed this with Lee, and approved of him selling engineered products.

Finally, Lee and Thermal disagree as to the definition of "pre-engineered" and "engineered". According to Lee, Thermal never had any pre-engineered products to sell. Smith acknowledged it had few, if any, pre-engineered products and that most of the products Lee sold were "engineered" as he understood the term. Counsel for Thermal maintained there was an oral agreement to sell engineered products that "ran parallel" to the written contract, but argued it was not incorporated into the written contract; therefore, the contract's notice provision was not applicable. Thermal's attorney conceded on Thermal's behalf that all of the jobs for which Lee was compensated in the November 1995 payment, following Lee's termination, were for "engineered" items.

While acknowledging that almost from the beginning Lee secured orders mostly for custom-made products that required the services of Thermal's engineering division, Thermal nevertheless paid Lee throughout the contract period for all orders he secured in his territory, not just for pre-engineered products. Thermal also continued to pay Lee commissions, per the language of their written agreement, for orders procured by others in his territory, although Lee did not participate in bringing the orders to the company.

We agree with the trial court's finding that the parties orally modified their written contract to encompass paying Lee commissions for all products sold within Lee's exclusive territory, regardless of whether the products were pre-engineered. Accordingly, we affirm the trial court's ruling that Lee was due $58,465.64 in unpaid commissions that accrued during the period of the contract, and subsequent to termination, as per the contract's residual notice provision.

## II. Prejudgment Interest Award under Rule 60(a)

■ Thermal next contends the trial court committed reversible error in concluding Rule 60(a), SCRCP was an appropriate vehicle for awarding prejudgment interest to Lee. We disagree.

The judgment in this case was entered on August 23, 1999, but the Clerk of Court inadvertently failed to provide either party with notice of entry of the judgment. Lee's attorney discovered the order on April 28, 2000. On May 12, 2000, Lee Filed a motion under Rule 60(a), SCRCP asserting the trial court mistakenly omitted an award of prejudgment interest from the order, and that he was entitled to prejudgment interest on the unpaid commissions as matter of law. Thermal opposed the motion, arguing Rule 60(a) was not a proper procedural mechanism for recovering prejudgment interest because the failure to include interest was not the result of a clerical mistake.

After a hearing, the trial court granted Lee's motion and awarded him prejudgment interest of $16,901.61. The court noted Lee submitted a detailed chart at trial with calculations of the prejudgment interest. "In addition, the parties agreed that the payment date for each invoice was 60 days after the invoice date, unless shown otherwise. Since payment of [Lee's] commission was due fifteen days after [Thermal] received its invoice payments, the commissions were due seventy-five days after the invoice payment date. [Lee's] exhibit 16 calculated interest at the rate of 8 and 3/4%, per S.C.Code Ann. § 34–31–20(A)." The court found the amount of prejudgment interest due was "easily ascertainable from [Lee's] exhibit 16." The court stated although Lee's exhibit showed interest accruing after 60 days, the amount of interest could be adjusted and "is easily ascertainable and calculable on the basis of the record before this Court."

The statutory basis for the award of prejudgment interest is section 34–31–20(A), which provides:

> In all cases of accounts stated and in all cases wherein any sum or sums of money shall be ascertained and being due, *shall draw interest* according to law, the legal interest rate shall be at the rate of eight and three-fourths percent per annum.

S.C.Code Ann § 34–31–20(A) (1987) (emphasis added).

▮▮ "Prejudgment interest is allowed on liabilities to pay money from the time when, either by agreement of the parties or operation of law, the payment was demandable, if the sum is certain or capable of being reduced to certainty .... *The*

*right of a party to prejudgment interest* is not affected by rights of discount or setoff claimed by the opposing party. It is the character of the claim and not of the defense to it that determines whether prejudgment interest is allowable." *S. Welding Works, Inc. v. K & S Constr. Co.*, 286 S.C. 158, 164, 332 S.E.2d 102, 106 (Ct.App.1985) (citations omitted) (emphasis added).

Rule 60(a), SCRCP provides "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."

Wright & Miller, discussing the types of errors covered by the federal rule 60(a), which is virtually identical to South Carolina's rule, state in pertinent part:

The court may correct clerical errors and mathematical computations. It has been held that it also may correct ... the addition of costs to a judgment. *The judgment may be corrected by including interest if this is a matter of right but not if allowing interest is discretionary.*

11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2854 (1973).

The commentators further state:

There is a considerable overlap between Rule 59(e) and Rule 60. It has been held that a motion for amendment of the judgment to include prejudgment interest is under Rule 60(a), and is not subject to the time limit of Rule 59(e), *if the party is entitled to interest as a matter of right,* but that if allowance of prejudgment interest is in the discretion of the court then the ten-day limit of Rule 59(e) applies.

*Id.* § 2817 (emphasis added).

There apparently was no real dispute at trial that the statutory provision for prejudgment interest was applicable to Lee's claim. The trial court noted in its order that both parties agreed that the pleadings would be construed to assert a claim for pre-judgment interest. The court found the amount of prejudgment interest was easily ascertainable from the evidence presented during the trial.

Although it is proper to make this motion within the time limits of Rule 59(e), there is authority that where interest is available as a matter of right, rather than discretion, the interest may properly be sought in a Rule 60(a) motion. *See, e.g., State, Personnel Bd. v. Akers,* 797 So.2d 422, 426 n. 4 (Ala.2000) (holding Court has authority under Rule 60(a), Ala R. Civ. P., to correct omissions of pre-judgment interest from a judgment where the court intended to grant pre-judgment interest, but failed to do so, or where the judgment did not include pre-judgment interest mandated by law); *Brooks v. Jackson,* 813 P.2d 847, 849 (Colo.Ct.App.1991) (The failure to include interest in a judgment, when the law provides for the award of pre-judgment interest, is an oversight which fits squarely within the parameters of Rule 60(a); therefore, the addition of interest to a verdict is a ministerial act that is mandatory and does not require the exercise of judgment or discretion.). *But see Jennings v. Ibarra,* 921 P.2d 62, 65 (Colo.Ct.App.1996) (holding a Rule 60(a) motion could not be used to include pre-judgment interest in the circumstances where it was clear the trial court did not originally intend to make such an award. The court rejected the position that a failure to include an award of mandatory pre-judgment interest is always to be viewed as an oversight or omission which is correctable at any time by amendment of the judgment under Rule 60(a).)

Because pre-judgment interest is mandatory under the statute for this type of claim, we find no error in the trial court's decision to correct this omission under 60(a), especially in light of the fact that the parties were not given notice of entry of the order in the usual manner.[1] Accordingly, we affirm the trial court's award of pre-judgment interest to Lee.

### III.   Sales Representatives Act, § 39–65–10 to –80

Thermal asserts the trial court erred in applying the Sales Representatives Act, S.C.Code Ann. § 39–65–10 to –80, to Lee's claims, because Lee did not solicit wholesale orders as

---

1. *Cf. Calhoun v. Calhoun,* 339 S.C. 96, 102, 529 S.E.2d 14, 18 (2000) (stating in a case involving section 34–31–20(b)'s provision for post-judgment interest, that the "[u]se of the word 'shall' in a statutory provision indicates the provision is mandatory").

required by the Act. Therefore, Thermal argues Lee was not entitled to punitive damages or attorney fees. We agree.

S.C.Code Ann. Section 39–65–20 (Supp.2001) provides: "When a contract between a *sales representative* and a *principal* is terminated for any reason, the principal shall pay the sales representative all commissions that have or will accrue under the contract to the sales representative according to the terms of the contract." (emphasis added).

The Act defines a "principal" as one who:

(a) manufactures, produces, imports, or distributes a tangible product for *wholesale;*

(b) contracts with a sales representative to solicit orders for the product; *and*

(c) compensates the sales representative, in whole or in part, by commission.

*Id.* § 39–65–10(3) (emphasis added).

A "sales representative" is a person who:

(a) contracts with a principal to solicit *wholesale* orders;

(b) is compensated, in whole or in part by commission;

(c) does not place orders or purchase for his own account or for resale; and

(d) *does not sell or take orders for the sale of product to the ultimate consumer.*

*Id.* § 39–65–10(4) (emphasis added).

Where a violation of the Act has occurred, the sales representative is entitled to sales commissions plus punitive damages up to three times the amount of commissions due, plus reasonable attorney fees and costs. *Id.* § 39–65–30.

"The cardinal rule of statutory construction is that we are to ascertain and effectuate the actual intent of the legislature." *Burns v. State Farm Mut. Auto. Ins. Co.,* 297 S.C. 520, 522, 377 S.E.2d 569, 570 (1989). "[W]ords used therein must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand its operation." *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992). "The language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose." *Id.* Where a word is not defined in

a statute, our appellate courts have looked to the usual dictionary meaning to supply its meaning. *See e.g. Gulf Oil Corp. v. S.C. Tax Comm'n,* 248 S.C. 267, 270, 149 S.E.2d 642, 643 (1966) (citing Webster's New International Dictionary for definition of a statute's reference to "paid-in surplus"); *State v. Dickinson,* 339 S.C. 194, 199, 528 S.E.2d 675, 677 (Ct.App. 2000) (citing Black's Law Dictionary for definition of "obtaining" in statute for obtaining property in fraudulent manner); *State v. Estridge,* 320 S.C. 288, 291, 465 S.E.2d 91, 93 (Ct.App. 1995) (referencing dictionary definition in determining legislative intent).

Thermal argues that the Act only relates to commissions earned on "wholesale orders." Thermal defines "wholesale" as the sale of goods in quantity usually for resale by a retail merchant. Thermal argues that the Act is not applicable to this case because the items manufactured by Thermal were sold for use by the purchaser or were sold to manufacturers to be included in a complete piece of operational equipment. Thermal contends that neither of these sales can be considered wholesale. Therefore it argues Lee is not a sales representative as defined by the Act and is not entitled to attorney fees or punitive damages.

Lee avers that the Legislature passed the Sales Representative Act intending to cover all workers who are not paid their wages or commissions. Lee therefore argues that interpreting the Act to limit its application to a narrower class of workers would only serve to thwart the Legislative intent behind the Act. Lee agrees with the definition for wholesale employed by the trial court. In holding the Sale Representatives Act to be applicable in this case, the trial court stated only that it found "the definitions of 'wholesale' and 'retail' as defined in *Roland Elect. Co. v. Walling,* 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1946), to be persuasive." In *Roland,* the Supreme Court found among other definitions, that "wholesale sales" means buying goods for the purpose of reselling them, but could also refer to sales of goods used for business purposes or made to commercial, professional, or governmental users, rather than for personal or household consumption. *Id.* at 674–75, 66 S.Ct. 413.[2] Lee contends that Thermal's

**2.** *Roland* was superseded by statute. *Hodgson v. Crotty Bros. Dallas, Inc.,* 450 F.2d 1268, 1272 (5th Cir.1971).

sales would be encompassed under this definition of "wholesale", and he is thus entitled to attorney fees and punitive damages.

Our Sales Representative Act defines a sales representative for purposes of the Act as someone who "contracts with a principal to solicit wholesale orders." S.C.Code Ann. § 39–65–10(4). The South Carolina General Assembly did not include the definition of "wholesale" or "wholesaler" in this Act, and our research has revealed no South Carolina case law that has defined these terms as they relate to this Act. In interpreting the words "wholesale" and "wholesaler" we look to the plain and ordinary meaning of these words. "Wholesale" is defined as "[t]he sales of goods or commodities [usually] for resale by a retailer, as opposed to a sale to the ultimate consumer." Black's Law Dictionary 1591 (7th ed.1999). A "wholesaler" is "[o]ne who buys large quantities of goods and resells them in smaller quantities to retailers or other merchants, who in turn sell to the ultimate consumer." *Id. See Am. Delta Techs., Inc. v. RK Elec. Info. Concepts,* 276 N.J.Super. 283, 647 A.2d 1344, 1347 (App.Div.1994) (stating where the terms "wholesale" and "wholesale orders" were not defined in its sales representatives statutes, "reference to the usual definition of those terms would apply;" the court noted a "wholesaler" is "[o]ne who buys in comparatively large quantities, and then resells, usually in smaller quantities, but never to the ultimate consumer")(citing Black's Law Dictionary).

We are persuaded that the Legislature intended the usual dictionary meaning to apply to the term "wholesale," and in so intending, limited the application of this Act to a specific class of workers. We decline to extend the meaning of wholesale as advocated by Lee. Whether or not all sales representative paid commissions should be covered under this Act is a question better addressed by the Legislature.

We find support for our definition of "wholesale" in at least one other jurisdiction that has considered this issue in a case involving similar facts. In *Hoffman v. Van Pak Corp.,* 16 S.W.3d 684 (Mo.Ct.App.2000), the Missouri Court of Appeals held that an employer which manufactured electrical control systems was not a principal within the meaning of its statutes

allowing damages to sale representatives who are not timely paid.

The employer primarily custom-manufactured each product after it was ordered and thus was mostly selling to end users, although some sales were made at wholesale. The Missouri court rejected the broader definitions of "wholesale" found in *Roland Electrical Co.*[3] The *Hoffman* court noted:

> The statute uses the word "wholesale" in defining both "principal" and "sales representative." We presume that the legislature did not insert idle verbiage or superfluous language in the statute. Each word, clause, sentence, and section of a statute should be given meaning.
>
> * * *
>
> It is clear that in its use of the word "wholesale" the legislature intended to address a problem in the wholesale distribution system and wholesale markets and did not intend to create additional remedies for all salespersons who are paid by commission. Whether such a remedy should be extended to all commissioned salespeople is a question for the legislature, not the courts.

*Id.* at 689–90 (citations omitted).

In order to recover attorney fees and punitive damages, Lee must fit within the parameters of a "sales representative" as defined in this Act. The evidence at trial was that Lee solicited orders of control panels to manufacturers, who in turn used the items to manufacture equipment. Thus, those placing the orders were, for the most part, the ultimate consumer or end user of the products. Further, Lee himself testified that the use of the concepts of "wholesale" and "retail" have no application to his work. We find that Lee does not fit within the meaning of "sales representative" as defined by the Act, and

---

3. "In *Roland Electric* the question before the Court was whether the exemption from the Fair Labor Standards Act for employees engaged in retail or service establishments applied to the employees of a firm which engaged in manufacturing and supplying electrical equipment and services in interstate commerce to commercial and industrial users. The Court analyzed the word "retail" by contrasting it with "wholesale." Its conclusion, that the firm in question was not a retail or service establishment under the Fair Labor Standards Act, cannot be taken out of that context and fairly be applied to the Missouri statute at issue here." *Id.* at 689.

therefore, we reverse the trial court's finding that the Sales Representative Act is applicable to Lee's claims and, consequently, reverse the court's award of attorney's fees to Lee.

## *Lee's Appeal*

Lee contends the trial court abused its discretion in failing to award him punitive damages under the Sales Representatives Act. Because we conclude the Act was not applicable to Lee's claim, we affirm the court's denial of punitive damages.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's award of past due commissions and pre-judgment interest. Based on our finding that the Sales Representative Act [4] does not apply to Lee's action because he does not deal in wholesale sales, we affirm the court's denial of punitive damages under the Act and reverse the court's award of attorney's fees. Accordingly, the decision below is

**AFFIRMED IN PART AND REVERSED IN PART.**

STILLWELL and SHULER, JJ. concur.

---

4. Because we find the Sales Representative Act is not applicable, we need not address Thermal's remaining argument that the Act's provision for attorney fees is unconstitutional.