559 S.E.2d 843

**Stacy WADE, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 25409.**

Supreme Court of South Carolina.

Submitted Nov. 28, 2001.

Decided Feb. 11, 2002.

---

Senior Assistant Appellate Defender Wanda H. Haile, of South Carolina Office of Appellate Defense, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General B. Allen Bullard, Jr., and Assistant Attorney General David Spencer, all of Columbia, for respondent.

## ON WRIT OF CERTIORARI

Justice BURNETT:

Stacy Wade ("Wade") appeals the PCR court's recommendation to revoke his inmate credits for falsely testifying under S.C.Code Ann. § 24–27–200 (Supp.2000). We reverse.

## FACTUAL/PROCEDURAL HISTORY

Wade originally pled guilty, as part of a plea bargain, to various charges including distribution of crack cocaine. Wade did not appeal, but ultimately filed for post-conviction relief ("PCR").

Wade asserts he is entitled to relief because he was coerced into pleading guilty. Wade insists he pled guilty after his attorney instructed him to do so or he would lose the plea bargain. Both of Wade's attorneys contradicted his testimony suggesting they induced him to lie.

The State moved, pursuant to S.C.Code Ann. § 24–27–200 (Supp.2000), to revoke Wade's inmate credits for testifying falsely at the PCR hearing. The PCR court denied Wade's petition, but granted the motion to revoke Wade's credits.

## ISSUE

Did the PCR court err in recommending forfeiture of Wade's inmate credits under S.C.Code Ann. § 24–27–200 (Supp.2000) for testifying falsely?

## DISCUSSION

Deciding whether the PCR court erred this Court must first address whether § 24–27–200 applies to PCR hearings. We hold it does not.

## I

The relevant portion of the statute provides:

A prisoner shall forfeit all or part of his earned work, education or good conduct credits in an amount to be determined by the Department of Corrections upon recommendation of the court if the court finds that the prisoner has done any of the following **in a case pertaining to his incarceration or apprehension filed by him in state or federal court or in an administrative proceeding while incarcerated:**

. . .

> **(2) testified falsely or otherwise presented false evidence or information to the court;**

. . .

The court may make such findings on its own motion, on motion of counsel for the defendant, or on motion of the Attorney General, who is authorized to appear in the proceeding, if he elects, in order to move for the findings in a case in which the State or any public entity or official is a defendant.

S.C.Code Ann. § 24–27–200 (Supp.2000)(emphasis added).

This case presents an issue of first impression. Previously this Court in *Al–Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000), mentioned § 24–27–200 twice in dicta.[1] This case appears to be the first instance where the Attorney General's office has used the revocation statute.

This Court in *Al–Shabazz v. State, supra,* held an inmate may raise inmate credit issues or conditions of imprisonment under the Administrative Procedures Act ("APA") and not through PCR. This Court cited § 24–27–200 both times in discussing an inmate's challenge to credit issues within the

---

1.  This Court in *Thompson v. State*, 325 S.C. 58, 479 S.E.2d 808 (1997), dealt with the filing fee requirements in the Inmate Litigation Act. *See* S.C.Code Ann. § 24–27–100, *et seq.* (Supp.2000). We found the statute was inapplicable to PCR petitions because S.C.Code Ann. § 17–27–20 (1985), "specifically states that an action for post-conviction relief may be instituted without the payment of a filing fee, regardless of a person's financial status." *Thompson,* 325 S.C. at 59, 479 S.E.2d at 808.

APA. *See Al Shabazz,* 338 S.C. at 381–82, 527 S.E.2d at 756–57. *Al Shabazz* does not control the disposition of this case.

The cardinal rule of statutory construction is for a court to give effect to the Legislature's intent. *Charleston County Sch. Dist. v. State Budget and Control Bd.,* 313 S.C. 1, 437 S.E.2d 6 (1993). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed.1992). A court must apply the plain meaning of a statute where its language is unambiguous and conveys a clear meaning. *Hodges v. Rainey,* 341 S.C. 79, 533 S.E.2d 578 (2000).

The statute seemingly includes PCR hearings as cases instituted by an inmate, filed in a state court, relating to his incarceration. *See* 17 S.C. Jur. § 2 (1993) ("State post-conviction relief is a civil action by which a person convicted of, or sentenced for, a crime, and who is either detained or faces a possibility of detention, institutes a proceeding to challenge a court's conviction or sentence on constitutional grounds."). However, a court must reject a statute's interpretation leading to absurd results not intended by the Legislature. *Ray Bell Constr. Co. v. School Dist. of Greenville County,* 331 S.C. 19, 501 S.E.2d 725 (1998).

Additionally, courts are not confined to the literal meaning of a statute where the literal import of the words contradicts the real purpose and intent of the lawmakers. *Greenville Baseball v. Bearden,* 200 S.C. 363, 20 S.E.2d 813 (1942). To obtain the real purpose and intent of the lawmakers a court must not look to the "phraseology of an isolated section or provision, but the language of the statute as a whole considered in the light of its manifest purpose." *City of Columbia v. Niagara Fire Ins. Co.,* 249 S.C. 388, 391, 154 S.E.2d 674, 676 (1967). All provisions of a statute must be given full force and effect. *Nucor Steel v. South Carolina Pub. Serv. Com'n,* 310 S.C. 539, 426 S.E.2d 319 (1992). Applying § 24–27–200 to PCR actions results in absurd and disparate results not intended by the Legislature.

## II

The Legislature passed the revocation statute within the Inmate Litigation Act ("ILA"). *See* S.C.Code Ann. § 24–27–100, *et seq.* (Supp.2000); 1996 Act No. 455. The primary problem with applying § 24–27–200 to PCR actions is it creates disparity between non-incarcerated and incarcerated applicants.[2]

---

**2.** While our decision does not rest on federal law, we note the Legislature may have modeled the ILA on the federal Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Recisions and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321 (1996). The ILA does not expressly reference the PLRA, but numerous provisions virtually mirror each other. *Compare* PLRA, Pub.L. 104–134, 110 Stat. 1321–73 § 804(a)(codified at 28 U.S.C. § 1915(a)(2)) *with* S.C.Code Ann. § 24–27–100 (both requiring a prisoner filing a civil action to submit a certified copy of their trust fund account statement); *and* PLRA, Pub.L. 104–134, 110 Stat. 1321–73 § 804(a)(codified at 28 U.S.C. § 1915(b)(1)) *with* S.C.Code Ann. § 24–27–100 (both requiring prisoner filing a civil action to pay partial filing fee); *and* PLRA, Pub.L. 104–134, 110 Stat. 1321–73, § 804(a)(codified at 28 U.S.C. § 1915(b)(2)) *with* S.C.Code Ann. § 24–27–100 (both requiring prisoner after paying partial filing fee to make subsequent monthly payments until the full fee is paid); *and* PLRA, Pub.L. 104–134, 110 Stat. 1321–74, § 804(c)(codified at 28 U.S.C. § 1915(f)(2)(A)) *with* S.C.Code Ann. § 24–27–110 (both dealing with prisoner paying court costs); *and* PLRA, Pub.L. 104–134, 110 Stat. 1321–74, § 804(d)(codified at 28 U.S.C. § 1915(g)) *with* S.C.Code Ann. § 24–27–300 (both dealing with prisoners who bring three or more frivolous claims and both including an imminent danger exception); *and* PLRA, Pub.L. 104–134, 110 Stat. 1321–75, § 804(e)(codified at 28 U.S.C. § 1915(h)) *with* S.C.Code Ann. § 24–27–140 (both giving similar definitions of "prisoner"); *and* PLRA, Pub.L. 104–134, 110 Stat. 1321–76, § 809(a)(codified at 28 U.S.C. § 1932) *with* S.C.Code Ann. § 24–27–200 (both dealing with revocation of inmate credits).

The federal equivalent to § 24–27–200 is 28 U.S.C. § 1932. PLRA, Pub.L. 104–134, 110 Stat. 1321–76, § 809(a). Neither have been interpreted by a court. However, all federal courts to consider the issue limit the application of the PLRA to suits challenging prison conditions and not petitions challenging the actual confinement under 28 U.S.C. §§ 2254 or 2255 (federal habeas corpus statutes). *See United States v. Ortiz*, 136 F.3d 161 (D.C.Cir.1998); *Smith v. Angelone*, 111 F.3d 1126 (4th Cir.), *cert. denied*, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d 1036 (1997); *Anderson v. Singletary*, 111 F.3d 801 (11th Cir.1997); *United States v. Simmonds*, 111 F.3d 737 (10th Cir.1997); *Naddi v. Hill*, 106 F.3d 275 (9th Cir.1997); *United States v. Cole*, 101 F.3d 1076 (5th Cir.1996); *Santana v. United States*, 98 F.3d 752 (3rd Cir.1996); *Martin v. United States*, 96 F.3d 853 (7th Cir.1996); *Reyes v. Keane*, 90 F.3d 676 (2nd Cir.1996).

The chief problem with applying the ILA to PCR is the disparity between non-incarcerated and incarcerated applicants. The ILA applies only to prisoners "defined as a person who has been convicted of a crime and is incarcerated for that crime or is being held in custody for trial or sentencing." S.C.Code Ann. § 24–27–140 (Supp.2000). However, an individual may apply for PCR if they are in custody or can demonstrate prejudice from the persistent results of their conviction. *See Jackson v. State*, 331 S.C. 486, 489 S.E.2d 915 (1997). Applying the ILA to PCR proceedings gives the State the power to punish prisoners for asserting constitutional rights while non-incarcerated applicants can assert those rights without fear of retribution. The State does not proffer any justification for such disparate treatment.

We note this disparity increases when applying other provisions of the ILA to PCR actions. A court under § 24–27–300 may hold a prisoner for contempt of court for a period of not exceeding one year if it finds:

> the prisoner has, on three or more prior occasions, while incarcerated, brought in a court of this State a civil action or appeal pertaining to his incarceration or apprehension that was dismissed prior to a hearing on the merits on the grounds that the action or appeal was frivolous, malicious, or meritless.

S.C.Code Ann. § 24–27–300 (Supp.2000).

If the provisions of the ILA applied to PCR actions, a court could hold an incarcerated applicant who previously filed two frivolous lawsuits in contempt upon finding the subsequent PCR application frivolous. The incarcerated applicant may suffer a revocation of inmate credits and serve additional prison time. The non-incarcerated applicant suffers no such infirmities.[3]

Section 24–27–300 also creates an exception to the three strikes contempt if "the court finds the prisoner was under imminent danger of great bodily injury ... at the time of the filing of the present action." *Id.* This exception is logical only if one reads the statute as creating an exception for prisoners

---

**3.** We do not rule on the application of the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C.Code Ann. § 15–36–10, *et seq.* (Supp.2000), to PCR hearings.

filing suit challenging dangerous prison living conditions caus-
ing an imminent danger to them. A PCR applicant would
never fall under this "dangerous conditions" exception since
the purpose of a PCR is to challenge a conviction not living
conditions. *See Al–Shabazz v. State, supra; Tutt v. State,* 277
S.C. 525, 290 S.E.2d 414 (1982). The placement of the excep-
tion suggests the Legislature intended the ILA to apply to
non-PCR inmate litigation.

Further, applying the three strikes provision to PCR would
change this Court's tradition of giving prisoners access to
PCR with minimal burdens. Section 24–27–300 allows the
judge to hold the prisoner in contempt and to incarcerate the
inmate for an additional year. This measure may not stop a
prisoner from utilizing the PCR structure, but it would as-
suredly chill a prisoner's exercise of a constitutional right.
Such a result is contrary to the long tradition of giving
prisoners ready access to PCR mechanism.[4]

■ The presence of a complex fee structure evidences the
Legislature's intent to use the ILA to curb the abuses of
inmate litigation dealing with prison conditions. One way for
the Legislature to curtail inmate litigation dealing with prison
conditions is to require inmates to pay filing fees and court
costs. However, a PCR applicant is not required to pay a
filing fee or meet the complex payment structure of the ILA.[5]
*See Thompson v. State,* 325 S.C. 58, 479 S.E.2d 808 (1997). If
the Legislature intended for the ILA to apply to PCR actions
it seems the Legislature would first mandate a filing fee for
PCR applications.

---

**4.** *Cf. Smith v. Angelone,* 111 F.3d at 1131 *quoting Martin,* 96 F.3d at
855–56 (The Fourth Circuit, construing the Federal three strikes provi-
sion, reasoned Congress intended to apply the section to lawsuits in tort
not habeas petitions because the result "would be contrary to the long
tradition of ready access of prisoners to federal habeas corpus, as
distinct from their access to tort remedies.").

**5.** *Cf. Smith v. Angelone, supra.* The Fourth Circuit reasoned if Congress
intended for the PLRA to apply to habeas petitions it would change the
habeas filing fee from $5 to an amount equal to the filing fee of $120 for
all other civil complaints. The court found Congress would not create
a complex payment structure to ensure payment of $5, but instead
created the structure to ensure indigent inmates would not use the legal
system to file frivolous claims regarding prison conditions.

The Legislature limits the application of the ILA to civil cases. *See* S.C.Code Ann. §§ 24–27–100–110, 130, 150, 300 (Supp.2000). While PCR action is considered a "civil case," it is, like its federal equivalent,[6] categorized as such to differentiate it from criminal proceedings which are intended to punish thus requiring special constitutional protections. *See Ex parte Tom Tong*, 108 U.S. 556, 559, 2 S.Ct. 871, 872, 27 L.Ed. 826 (1883) (Habeas corpus review is a civil proceeding because "[p]roceedings to enforce civil rights are civil proceedings, and proceedings for the punishment of crimes are criminal proceedings.")

Courts treat PCR differently than traditional civil cases. For example, PCR actions are the only type of case which this Court mandates appellate counsel must brief all arguable issues, despite counsel's belief the appeal is frivolous. *See Austin v. State*, 305 S.C. 453, 409 S.E.2d 395 (1991); *Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988); *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). A lawyer knowingly filing a frivolous claim in any other civil case violates Rule 11, SCRCP.[7] Additionally, a PCR applicant who is granted a hearing has a statutory right to be represented by a court-appointed attorney. S.C.Code Ann. § 17–27–60 (1985); *Whitehead v. State*, 310 S.C. 532, 426 S.E.2d 315 (1992). This right does not generally exist for plaintiffs in civil cases.

In addition to these concerns, we note the legislative and judicial systems already place limitations to deter inmate litigation abuse in the PCR process. First, a petitioner must raise all available grounds for relief in the first PCR applica-

---

6. The Fourth Circuit in *Smith v. Angelone, supra,* wrote:

"(H)abeas corpus cases are, in effect, hybrid actions whose nature is not adequately captured by the phrase 'civil action'; they are independent civil dispositions of completed criminal proceedings. The 'civil' label is attached to habeas proceedings in order to distinguish them from 'criminal' proceedings, which are intended to punish and require various constitutional guarantees." *Smith,* 111 F.3d at 1130 (*quoting Santana,* 98 F.3d at 754–55).

7. Attorney's signature on a pleading or motion "constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay." *See* Rule 11(a), SCRCP.

tion since successive applications are usually barred. S.C.Code Ann. § 17–27–90 (1985); *Aice v. State*, 305 S.C. 448, 409 S.E.2d 392 (1991). Second, an applicant must file the PCR application within one year of the final resolution of the criminal conviction. S.C.Code Ann. § 17–27–45(A) (Supp. 2000). Third, a petitioner faces a one-year deadline to file an application asserting a newly created standard or right, and to raise newly discovered material facts. S.C.Code Ann. § 17–27–45(C)(Supp.2000).

An individual under PCR effectively is granted one chance to argue for relief and must do so within a year of his final appeal. These limitations adequately prevent inmates from abusing the PCR process.

## CONCLUSION

Section 24–27–200 does not apply to PCR hearings. The PCR court's recommendation to revoke Wade's inmate credits is **REVERSED**.

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.