659 S.E.2d 101

The STATE, Respondent,

v.

Ronald Donald DINGLE, Appellant.

No. 26444.

Supreme Court of South Carolina.

Heard Oct. 30, 2007.

Filed Feb. 27, 2008.

Rehearing Denied April 16, 2008.

644

Tara Shurling, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, all of Columbia; and Solicitor Cecil Kelly Jackson, of Sumter, for Respondent.

Justice BEATTY:

Ronald Donald Dingle appeals from the circuit court's order resentencing him instead of granting him a new trial upon remand by the post-conviction relief (PCR) court. We affirm as modified.

## FACTS

On December 22, 1992, seventeen-year-old Dingle was charged in Sumter County with murder, first-degree burglary, assault and battery with intent to kill (ABIK), two counts of possession of a weapon during a violent crime, two counts of possession of a sawed-off shotgun, pointing a firearm, first-degree burglary, and kidnapping. While out on bond in June 1993, Dingle was arrested in Lee County and charged with trafficking in crack cocaine. Dingle pled guilty to the Lee County offense in September 1993 and was sentenced to three years imprisonment and a $25,000 fine. Dingle later became concerned about the potential effect of his Lee County conviction on his eligibility for parole, and he filed an application for PCR. The PCR court dismissed the matter without prejudice,

noting that the court handling the Sumter County charges would be better able to deal with the matter.

In April 1995, Dingle entered a negotiated plea of guilty to the Sumter County charges. The State informed the plea court that in exchange for the plea, Dingle would not be exposed to the death penalty and would still be eligible for parole. The plea court sentenced Dingle on the Sumter County charges to consecutive terms of: life imprisonment on each of the murder and first-degree burglary charges; twenty years imprisonment for ABIK; five years for each count of possession of a weapon during a violent crime; ten years for each count of possession of a sawed-off shotgun; and five years for pointing a firearm. Further, as part of the negotiated plea and to avoid ineligibility for parole for a subsequent conviction,[1] Dingle's prior conviction and sentence on his Lee County trafficking in crack cocaine charge were vacated, he pled guilty again, and he was resentenced at the same time as his plea to the Sumter County charges. He was sentenced to a concurrent term of three years and a fine of $25,000. The plea judge placed on the record the fact that the Lee County plea was part of the same sentencing proceeding as the Sumter County plea. Throughout the sentencing hearing, the parties and the plea judge all indicated their intent that Dingle would be eligible for parole after serving thirty years of his life sentence.

In 1996, Dingle learned that he would not be eligible for parole because the Sumter County sentences were consecutive, and he filed another application for PCR. After a hearing, the PCR court issued an order in December 1997 finding Dingle pled guilty pursuant to assurances by his counsel and by the Sumter County plea court that he would be eligible for parole after thirty years. The PCR court vacated the Sumter

---

1. Although trafficking was not defined as a violent crime at the time Dingle originally entered his Lee County plea, trafficking was defined as a "violent crime" at the time of his Sumter County guilty plea. Therefore, the prior Lee County plea would have rendered Dingle ineligible for parole consideration had it not been vacated and the plea re-entered at the same time as his Sumter County plea. *See* S.C.Code Ann. § 16-1-60 (Supp.2006) (including trafficking as a violent offense); S.C.Code Ann. § 24-21-640 (2007) (holding that parole must not be granted to a person serving a sentence for a second or subsequent conviction following a separate sentencing for a prior conviction for violent crimes).

County sentences and remanded the matter to the circuit court "for sentencing consistent with the intent of the plea agreement or for a new trial." The Lee County plea and sentence were not addressed in the order.

Dingle's case was not called for trial for several years, and he filed a motion for a speedy trial in 2004. Representatives from the Department of Probation, Parole, and Pardon Services were present at the hearing. Dingle testified that: he wanted a new trial; it was his decision to make; he understood that he could face a punishment of life without the possibility of parole if he were convicted; he would not be eligible for parole anyway upon resentencing; and he did not get the benefit of his bargain when the death penalty, a major motivator in his plea decision, was later ruled unconstitutional for minors. The State indicated it would *nolle pros* the two gun charges that could potentially interfere with parole eligibility so that Dingle could be eligible for parole after thirty years.[2]

The circuit court denied Dingle's motion for a new trial. The court interpreted the PCR court's order as holding that Dingle was to be "sent back for resentencing in accordance with the agreement and if the State is not willing to do that then he would be entitled to a new trial." Despite Dingle's arguments that he would not be eligible for parole if he were just resentenced because the new sentencing date would constitute a "subsequent offense," the court found Dingle could get the benefit of the plea bargain and it ordered the parole board to "compute Dingle's eligibility for parole on the murder conviction as if these other convictions were either concurrent or not on his record." Finally, the court disagreed with Dingle's argument that he was entitled to a new trial because the major motivating factor to plead guilty was to avoid the death penalty, and it was later outlawed for minors pursuant to *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). The court re-imposed the original sentences given to Dingle on the Sumter County charges, but the sentences were to run concurrently instead of consecutively.

2. It does not appear from the record that the State followed through with this proposal.

Dingle's motion to alter or amend the judgment was denied, and he appeals.

## DISCUSSION

Dingle argues the circuit court abused its discretion by not allowing him to withdraw his guilty pleas and have a new trial because: (1) resentencing him on the Sumter County convictions would amount to a "subsequent conviction" such that he would be ineligible for parole anyway; and (2) it was his choice as to whether he was resentenced or entitled to a new trial, especially in light of the fact that he no longer had the full benefit of the original bargain because the death penalty was later found to be unconstitutional for minors. We disagree.

■ In his first argument, Dingle focuses on the language "second or subsequent conviction" in the statute to argue that resentencing him on the Sumter County charges would trigger the no-parole clause in the statute. As will be further discussed, Dingle has misinterpreted the statute.

■ Parole is a privilege, not a matter of right. *Sullivan v. South Carolina Dep't of Corr.*, 355 S.C. 437, 443 n. 4, 586 S.E.2d 124, 127 n. 4 (2003). Although a court's final judgment in a criminal case is the pronouncement of the sentence, the parole board has the sole authority to determine parole eligibility separate and apart from the court's authority to sentence a defendant. *State v. McKay*, 300 S.C. 113, 115, 386 S.E.2d 623, 623–24 (1989). However, the court may order the parole board to structure a sentence in such a way as to carry out the intent of the parties. *Tilley v. State*, 334 S.C. 24, 28–29, 511 S.E.2d 689, 692 (1999) (ordering the parole board to consider the five-year mandatory term for possession of a firearm as being served first such that the prisoner would be considered eligible for parole as the parties had intended).

■■ This Court has the authority to interpret the parole statute. In interpreting statutes, the Court looks to the plain meaning of the statute and the intent of the Legislature. *Hinton v. South Carolina Dep't of Prob., Parole, & Pardon Servs.*, 357 S.C. 327, 332, 592 S.E.2d 335, 338 (Ct.App.2004). As with any statute that is penal in nature, the Court must

construe it strictly in favor of the defendant and against the State. *Hair v. State,* 305 S.C. 77, 79, 406 S.E.2d 332, 334 (1991) (construing in favor of the defendant the different time frames for parole eligibility found in the general parole statute and in a statute regarding parole eligibility for burglary). The relevant portion of the parole statute provides: "The board must not grant parole nor is parole authorized to any prisoner serving a sentence for a second or subsequent conviction, following a separate sentencing for a prior conviction, for violent crimes as defined in Section 16–1–60." S.C.Code Ann. § 24–21–640 (2007).

A clear reading of the underlying statute is that in order to trigger the no-parole language, a defendant must not only have a separate sentencing hearing, but he or she must also have a separate *conviction.* Dingle entered his pleas to both the Sumter County and Lee County charges in the *same proceeding,* and only his sentences, not his *convictions,* on the Sumter County charges were overturned by the PCR court. A clear reading of the statute indicates the Legislature's desire to punish subsequent offenders. To interpret the statute in such a way as to bar parole consideration where, as here, the sentence alone is overturned and remanded for resentencing would lead to an absurd result. *Wade v. State,* 348 S.C. 255, 259, 559 S.E.2d 843, 845 (2002) ("However, a court must reject a statute's interpretation leading to absurd results not intended by the Legislature."). Dingle's argument that the remand of his Sumter County sentences was a "subsequent conviction" rendering him ineligible for parole is erroneous, and specific performance of the plea bargain can still be accomplished.

Furthermore, the State has affirmatively stated its intent to comply with the plea bargain and does not intend to challenge Dingle's eligibility for parole. Thus, the State, and its various agencies, would be estopped from later asserting Dingle was ineligible for parole. *See State v. Peake,* 353 S.C. 499, 505, 579 S.E.2d 297, 300 (2003) (discussing whether the State was estopped to prosecute a defendant based on representations made by someone regarding a civil action).

Citing cases that deal with breaches of plea agreements, Dingle next argues that he was entitled to choose between

resentencing or a new trial because it "comports with this jurisdiction's recognition of the importance of contract principles in resolving plea agreement disputes." He also argues that he was entitled to choose a trial because he could never get the benefit of the original plea bargain where a motivating factor was to avoid a death sentence, and the death penalty was later ruled unconstitutional for minors.

It has long been established that state prosecutors "are obligated to fulfill the promises they make to defendants when those promises serve as inducements to defendants to plead guilty." *Sprouse v. State*, 355 S.C. 335, 338, 585 S.E.2d 278, 279 (2003) (citing *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). Where a solicitor breaches a plea agreement, the United States Supreme Court has indicated two remedies: specific performance of the plea agreement; or allowing the defendant to withdraw his guilty plea. *Santobello*, 404 U.S. at 262–63, 92 S.Ct. 495. As Dingle correctly notes, although South Carolina has not ruled on whether a defendant may elect the remedies when a solicitor breaches a plea agreement, some jurisdictions have held that it is the defendant's right to choose between the remedies in such a situation. *See State v. Munoz*, 305 Mont. 139, 23 P.3d 922, 928 (2001) (relying upon contract law principles to find a "non-breaching defendant must be afforded the initial right to choose from available remedies where the State breaches a plea agreement"); *State v. Miller*, 110 Wash.2d 528, 756 P.2d 122, 126–27 (1988) (noting that the prosecutor failed to carry his burden of demonstrating the defendant's choice of remedy was unjust).

■ However, in the instant case, the State did not violate the terms of the agreement: in exchange for Dingle's plea, they did not seek a death sentence and they agreed to structuring the sentence such that he would still be parole eligible. It was only the way the plea judge structured the sentence that rendered Dingle parole ineligible. Because the State did not violate the agreement, the question of election of remedies does not apply.

■ Finally, there is no merit to Dingle's argument that he did not get the benefit of the bargain because the death penalty later became unconstitutional for minors. *See Roper*

*v. Simmons*, 543 U.S. 551, 575, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding capital punishment for persons under the age of eighteen when the crimes were committed violated the Eighth and Fourteenth Amendments). Dingle still received the benefit of his bargain when the parties agreed to structure the sentence such that he would be parole eligible. All the parties attempted to accomplish that goal. By remanding Dingle's Sumter County sentences for resentencing such that he will be parole eligible, Dingle gets the benefit of his bargain.

Because the plea agreement can faithfully be enforced and specific performance promotes judicial economy, we find the circuit court did not abuse its discretion in ordering resentencing instead of a new trial.

However, as the parties note in their briefs, the circuit court made some errors in the original order, including ordering the parole board to only consider the murder conviction when determining parole eligibility and finding there was no retroactive application of the statute defining trafficking as a violent offense. *See Sullivan v. State*, 331 S.C. 479, 479, 504 S.E.2d 110, 111 (1998) (holding it is not a violation of the ex post facto clause for the Legislature to enhance punishment for an offense based on a prior conviction of the defendant, even though the enhancement provision was not in effect at the time of the previous offense); S.C.Code Ann. § 24–21–640 (2007) (noting that the parole board has the sole authority to determine parole eligibility based on the prisoner's complete record). Although we affirm the circuit court's decision to enforce the plea agreement by resentencing Dingle, we modify the court's order to the extent it made findings inconsistent with the above-cited law.

**AFFIRMED AS MODIFIED.**

TOAL, C.J., MOORE, WALLER, and PLEICONES, JJ., concur.