682 S.E.2d 795

**Brian MAJOR, Respondent,**

v.

**SOUTH CAROLINA DEPARTMENT OF PROBATION, PAROLE AND PARDON SERVICES, Appellant.**

No. 26672.

Supreme Court of South Carolina.

Heard Feb. 5, 2009.

Decided Aug. 24, 2009.

Rehearing Denied Aug. 24, 2009.

458

Deputy Director of Legal Services Teresa A. Knox, Assistant Chief Legal Counsel J. Benjamin Aplin, Legal Counsel Tommy Evans, Jr., of Columbia, for Appellant.

W. Gaston Fairey, of Columbia, for Respondent.

Justice BEATTY.

In this case, the South Carolina Department of Probation, Parole and Pardon Services (the Department) appeals the Administrative Law Court's (ALC's) decision that the Department erred in its interpretation of section 16–23–490 [1] of the South Carolina Code of Laws regarding the implementation of the sentence imposed by the trial court and Brian Major's eligibility for parole. This Court granted the request of the

---

1. Although the code provision in effect at the time Major committed the offenses in 1990 has since been amended, we cite to the current version of section 16–23–490 given there have been no substantive changes that would affect the decision in this case. Act No. 184, 1993 S.C. Acts 3292.

Section 16–23–490 provides for additional punishment for persons possessing a weapon during the commission of a violent crime. Persons who are in possession of a firearm or knife during the commission of a violent crime, and are convicted of the underlying violent crime, must additionally be sentenced to five years in prison. S.C.Code Ann. § 16–23–490(A) (2003). The five-year sentence is mandatory and non-parolable. S.C.Code Ann. § 16–23–490(B), (C) (2003). The statute further provides that a sentencing court may make the additional five years consecutive or concurrent. S.C.Code Ann. § 16–23–490(B) (2003).

Court of Appeals for certification pursuant to Rule 204(b), SCACR.

## FACTS

On February 8, 1996, Major was convicted of murder and possession of a weapon during the commission of a violent crime. The trial judge sentenced Major to a term of life imprisonment for murder and five years imprisonment for the weapons charge. The sentencing sheet for the weapons offense merely stated "consecutive."

On May 8, 2002, the South Carolina Department of Corrections (DOC) informed Major that he was no longer eligible for parole on his life sentence [2] because he could not begin serving the five-year weapons charge sentence until he completed his life sentence for murder. The DOC's notification was based on the Department's interpretation of section 16–23–490.

In a PCR application, Major challenged the Department's interpretation of his sentence and the denial of parole eligibility. The PCR judge dismissed the application without prejudice so that the issues could be properly raised in the ALC in accordance with *Al–Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000).[3] Major timely filed a petition for a writ of certiorari for this Court to review the PCR judge's order.

While awaiting a hearing before the ALC and a decision by this Court, Major filed a motion for clarification of his sentence. Relying on this Court's decision in *Tilley v. State*, 334 S.C. 24, 511 S.E.2d 689 (1999),[4] Major challenged the sequence

---

2. At the time Major committed the murder, the applicable statute provided for parole eligibility after the service of twenty years on a sentence of life imprisonment. S.C.Code Ann. § 16–3–20(A) (1985).

3. *Al–Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000) (holding inmate was entitled to seek judicial review under Administrative Procedures Act after Department reached its final decision).

4. In *Tilley*, the defendant pled guilty to kidnapping, first-degree criminal sexual conduct, and possession of a firearm during the commission of a violent crime. He was sentenced to life imprisonment for kidnapping, eighteen years for first-degree CSC, and five years for possession of a weapon during the commission of a violent crime. The sentences were to be served consecutively. *Tilley*, 334 S.C. at 26, 511 S.E.2d at 690.

in which he was to serve his sentences. Specifically, Major claimed that he had already served the five-year weapons charge sentence given he was awarded almost five years of credit for time served since his conviction. Thus, in light of *Tilley*, Major asserted that he should only be serving a life sentence which would make him eligible for parole. Under the Department's interpretation, Major averred that he would never be eligible for parole because he must serve his life term before serving the mandatory, five-year sentence.

Without a hearing, the trial judge denied Major's motion, explaining the sentence needs no clarification.

Following the circuit court judge's decision, Major sought another review by the Department of his parole eligibility. The Department issued a "final decision" and informed Major that he was not eligible for parole. As part of this notification, the Department informed Major that he had the right to appeal its decision to the ALC. Major moved for rehearing by the Department.

In the interim, having granted Major's petition for a writ of certiorari to review the PCR judge's dismissal of his PCR application, this Court issued an opinion on December 11, 2006 in which it affirmed the decision of the PCR judge. *Major v. State*, Op. No.2006–MO–042 (S.C. Sup.Ct. filed Dec. 11, 2006). Citing *Al–Shabazz*, this Court explained that "Major must

---

Tilley filed a PCR application after the Department informed him by letter that he was ineligible for parole due to the consecutive nature of the sentencing structure. Even though, in theory, Tilley was eligible for parole he was essentially ineligible because he was required to serve out his life term before serving the mandatory five-year term. *Id.* at 27, 511 S.E.2d at 691.

The PCR judge granted Tilley relief on this issue. Because the sentencing judge did not order that Tilley's sentences be served in a particular sequence, only that they be served consecutively, the PCR judge ordered that Tilley's sentences be served in a way that corrected the Department's interpretation of his sentence. *Id.* at 28–29, 511 S.E.2d at 692.

This Court agreed with the PCR judge's decision to rearrange the order of Tilley's sentences, placing the mandatory weapons sentence first, then the eighteen-year sentence for CSC, and finally the life sentence for kidnapping. The Court reasoned that the order would still effectuate the intent of the sentencing court, but the consecutive, mandatory five-year sentence on the weapons charge would not affect parole eligibility on the other offenses. *Id.* at 29, 511 S.E.2d at 692.

pursue his requested relief through the procedures provided in the Administrative Procedures Act in order to have his sentence reordered in accordance with our decision in *Tilley v. State*, 334 S.C. 24, 511 S.E.2d 689 (1999) (holding that the consecutive nature of the sentence does not mandate that the sentence be served in a specific order absent the sentencing court's clear articulation that the sentence be served in a specific order)."

Because of the procedural posture of Major's case, the Department delayed its final "rehearing" of Major's challenge to the agency's determination of his parole eligibility until after this Court issued its decision. On February 16, 2007, the Department sent Major a "final decision" letter, affirming its prior determination that he was ineligible for parole and directing him to file an appeal with the ALC.

Major filed his notice of appeal with the ALC. In his notice of appeal, Major argued that the Department incorrectly interpreted section 16–23–490 to require him to complete his life sentence on his murder conviction before beginning his five-year sentence on the weapons charge. Because the sentencing judge did not make any statement at the time of sentencing that the sentences were to be served in a specific order, Major claimed that his sentences should be "reordered" to comply with this Court's decision in *Tilley*.

The ALC issued an order reversing the Department's determination that Major was ineligible for parole. The ALC prefaced its decision by stating that criminal sentences must be interpreted in light of the sentencing judge's intent. In view of this principle, the ALC concluded that substantial evidence would not support the Department's finding "that the sentencing court intended for the five-year sentence to commence after [Major] completes his life sentence."

Ultimately, the ALC held that the Department erred in sequencing the sentences such that Major would never be eligible for parole. In so holding, the ALC reasoned "[t]here is no basis in logic or in the law for the intent to require an offender to serve an additional sentence after the completion of a life sentence." The ALC further stated "[t]he imposition of such a sentence would be a meaningless act absent the specific intent to preclude that individual from ever becoming

eligible for parole. Further, the inference of such [ ] intent presumes that the sentencing judge was willing to invade the province of the legislature by circumventing its parole eligibility laws."

The Department appealed the ALC's decision to the Court of Appeals. This Court granted the Court of Appeals' request for certification.

## DISCUSSION

The Department asserts the ALC erred in reversing its determination that Major is not parole eligible. Based on the terms of section 16–23–490 and the sentence structure imposed by the sentencing judge, the Department claims that Major is effectively serving a life sentence without eligibility for parole. The Department contends the sentencing judge's initial order indicated a clear intention for Major to serve the five-year mandatory term after completion of his life sentence. However, even if the original sentence could be construed as ambiguous, the Department avers that the sentencing judge clarified any question regarding his intention in the written order denying Major's motion for sentence clarification.

Essentially, the Department claims the sentencing judge definitively ordered that Major was to serve the five-year weapons sentence at the conclusion of his life sentence for murder thereby denying Major an opportunity for parole.

■ The decision of the ALC should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law. S.C.Code Ann. § 1–23–610(B) (Supp. 2008); *Olson v. S.C. Dep't of Health & Envtl. Control*, 379 S.C. 57, 63, 663 S.E.2d 497, 500–01 (Ct.App.2008) ("[T]his court can reverse the ALC if the findings are affected by error of law, are not supported by substantial evidence, or are characterized by abuse of discretion or clearly unwarranted exercise of discretion."). The ALC's order should be affirmed if supported by substantial evidence in the record. *Olson*, 379 S.C. at 63, 663 S.E.2d at 501.

■ At least facially, our decision in *Tilley* supports a finding that the ALC properly reordered the sequence of Major's sentences to ensure parole eligibility given the sen-

tencing sheets do not clearly articulate a particular order for which Major's sentences were to be served other than that they were to be "consecutive." This position is also bolstered by this Court's order affirming the PCR judge's dismissal of Major's PCR application, wherein we stated "Major must pursue his requested relief through the procedures provided in the Administrative Procedures Act in order to have his sentence reordered in accordance with our decision in *Tilley v. State,* 334 S.C. 24, 511 S.E.2d 689 (1999)." *Major v. State,* Op. No. 2006–MO–042 (S.C. Sup. Ct. filed Dec. 11, 2006).

Because our decision in *Tilley* left some questions unanswered, we take this opportunity to expound on the decision in *Tilley* and address fundamental issues concerning the role of the General Assembly, the authority of a sentencing judge, and the discretion of the Department with respect to an inmate's parole eligibility when a defendant is convicted of multiple offenses resulting in consecutive sentences.

 We preface our analysis with the general principle that parole is a privilege, not a matter of right. *State v. Dingle,* 376 S.C. 643, 649, 659 S.E.2d 101, 104 (2008); *Sullivan v. S.C. Dep't of Corr.,* 355 S.C. 437, 443 n. 4, 586 S.E.2d 124, 127 n. 4 (2003). Parole is a creature of statute and is exclusively in the province of the legislative branch of government. The General Assembly empowers the Department to administer the parole program.

The General Assembly established this parole privilege and identified which criminal offenses are parole-eligible by statute. *See Hair v. State,* 305 S.C. 77, 79, 406 S.E.2d 332, 334 (1991) (discussing parole eligibility of certain offenses established by the General Assembly's enactments); *State v. De La Cruz,* 302 S.C. 13, 16, 393 S.E.2d 184, 186 (1990) (noting that the penalty established for a particular crime is purely a matter of legislative prerogative, and that "[i]f the legislature so chooses, parole may not be made available to those who commit certain offenses").

 Confined by these legislative enactments, and the doctrine of separation of powers, a sentencing court is not authorized to determine parole eligibility. Instead, a court's final judgment in a criminal case is the pronouncement of the sentence which includes the ability to designate whether sen-

tences run concurrent or consecutive, subject to statutory restrictions. *State v. McKay,* 300 S.C. 113, 115, 386 S.E.2d 623, 623 (1989); *see De La Cruz,* 302 S.C. at 15, 393 S.E.2d at 186 ("Judicial discretion in sentencing, in suspending sentences, and in designating that sentences run concurrent or consecutive is subject to statutory restriction.").

■ In effectuating a sentencing court's order, the Department has the sole authority to look to the statutes to determine whether a defendant is eligible for parole separate and apart from the court's authority to sentence a defendant. *See Dingle,* 376 S.C. at 649, 659 S.E.2d at 104–05 (noting that the Department has the sole authority to determine parole eligibility separate and apart from the court's ability to sentence); *Cooper v. S.C. Dep't of Prob., Parole & Pardon Servs.,* 377 S.C. 489, 496, 661 S.E.2d 106, 110 (2008) (same).

■ Nevertheless, a court may order the Department to structure a sentence in such a way as to carry out the intent of the parties with regard to parole. *Tilley,* 334 S.C. at 28–29, 511 S.E.2d at 692 (ordering the Department to consider the consecutive, five-year mandatory term for possession of a firearm as being served first such that the prisoner would be considered eligible for parole as the parties had intended).

■ Our law, however, is well-established that a sentencing judge does not have the authority to determine parole eligibility through sentencing. *McKay,* 300 S.C. at 115, 386 S.E.2d at 623. A sentencing court *only* has the ability to order whether a sentence is consecutive or concurrent. *See* S.C.Code Ann. § 16–23–490(B) (2003) (providing that a sentencing court may make the additional five years consecutive or concurrent). In other words, a sentencing judge has the authority to structure a sentence but this authority is specifically limited by the intention of the General Assembly in its legislative enactments concerning parole-eligible offenses and an inmate's service of a sentence. The General Assembly has not statutorily authorized the courts or the Department to nullify its power to grant parole or determine parole-eligible offenses.

The General Assembly has specifically identified certain crimes where the sentence must be consecutive and must be served last in time. *See, e.g.,* S.C.Code Ann. § 16–15–395(D)

(Supp.2008) (providing that the sentence of a person convicted of first-degree criminal exploitation of a minor *"must run consecutively with and commence at the expiration of* another sentence being served") (emphasis added). Clearly, the General Assembly does not intend to define consecutive to mean last in time. Significantly, the General Assembly has not indicated that a consecutive sentence on a weapons charge must be served last. S.C.Code Ann. § 16–23–490(B) (2003).

With these principles in mind, we turn to the facts of the instant case. Initially, we note that it is not entirely clear what the sentencing judge intended as the sequence for Major's sentence given there was no clear pronouncement in the sentencing sheets.

■ However, even if the items in this case are construed as expressing a clear intent by the sentencing judge for Major to serve his murder sentence before the weapons sentence, we find the judge was not authorized to make Major's normally parole-eligible sentence ineligible for parole. An order to this effect would essentially create a *de facto* life without parole sentence which would defeat the parole privilege created by the General Assembly for Major's murder charge. Clearly, this would be a violation of the separation of powers doctrine.

Moreover, the Department's construction of the sentencing judge's intent and interpretation of the law contradicts this Court's pronouncement and rationale announced in *State v. Atkins,* 303 S.C. 214, 399 S.E.2d 760 (1990). In *Atkins,* this Court said "for purposes of parole eligibility, consecutive sentences should be treated as one general sentence by aggregating the periods imposed in each sentence." *Id.* at 219, 399 S.E.2d at 763 (citing *Mims v. State,* 273 S.C. 740, 259 S.E.2d 602 (1979)). More importantly, for purposes of this case, the *Atkins* Court concluded that "[m]ultiple life sentences cannot be aggregated in the imposition of prison time. Accordingly, they are to be considered as one general sentence, the parole eligibility for which is 20 years." [5] *Id.* This Court recognized its limitations and refused to invade the province of the General Assembly.

---

5. Atkins, like Major, was charged under the old law. The old law allowed parole after service of twenty years. *Atkins,* 303 S.C. at 219, 399 S.E.2d at 763.

Adopting the reasoning of the *Atkins'* Court, it follows that if a consecutive life sentence could not nullify parole eligibility on a parolable life sentence, then a five-year consecutive sentence cannot either.

■ The question now becomes what is the efficacy of a consecutive sentence? The answer is two fold. First, following the guidance of *Mims*, the time is aggregated and parole eligibility is calculated on the aggregated sentence. Secondly, if the consecutive sentence is a non-parolable offense then its sentence must be served and credited first against the aggregated sentence. This is necessary to give effect to the legislative grant of parole eligibility on the parole-eligible offense.[6]

■ Considering the above discussion, the meaning of "consecutive" needs further attention. Because this term is not defined in our code of laws, we must employ the rules of statutory construction to ascertain and effectuate the intent of the General Assembly. *See Hawkins v. Bruno Yacht Sales, Inc.*, 353 S.C. 31, 39, 577 S.E.2d 202, 207 (2003) ("The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature."); *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992) (stating the words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand a statute's operation); *Lee v. Thermal Eng'g Corp.*, 352 S.C. 81, 91–92, 572 S.E.2d 298, 303 (Ct.App.2002) ("Where a word is not defined in a statute, our appellate courts have looked to the usual dictionary meaning to supply its meaning.").

"Consecutive" means sentences run successively and the service of the sentence cannot run at the same time as the other sentences. *See Black's Law Dictionary* 1367 (7th ed. 1999) (defining "consecutive sentences" as "[t]wo or more sentences of jail time to be served in sequence. For example, if a defendant receives consecutive sentences of 20 years and 5 years, the total amount of jail time is 25 years.—Also termed *cumulative sentences; accumulative sentences.*"); *Webster's Concise Dictionary* 150 (2003) ("Following in uninterrupted

---

**6.** The argument that this approach is contrary to prior practice was made in part by the dissent in *Atkins* to no avail.

succession; successive."); *see generally* R.P.D., Annotation, *When Sentences Imposed by the Same Court Run Concurrently or Consecutively; and Definiteness of Direction with Respect Thereto,* 70 A.L.R. 1511 (1931 & Supp.2008) (outlining cases and discussing question of whether sentences on different counts or different offenses were intended to be served concurrently or consecutively and whether the sentence or sentences were sufficiently definite for the purpose intended).

Thus, a notation that a sentence is "consecutive," for sentencing purposes, does not necessarily delineate that the particular sentence has to run last. It merely indicates that all the sentences are to run successively, and not to run at the same time. *See Atkins,* 303 S.C. at 219, 399 S.E.2d at 763 (noting that "for purposes of parole eligibility, consecutive sentences should be treated as one general sentence by aggregating the periods imposed in each sentence"). Therefore, despite the fact that the weapons sentence was the last one imposed and it was denoted as "consecutive" there was no indication that the weapons sentence was to be the last sentence to be served. *See Tilley,* 334 S.C. at 28–29, 511 S.E.2d at 692 (ordering the Department to treat the consecutive weapons sentence as being served first such that the inmate could be considered for parole).

The General Assembly has specifically noted several crimes with limits on parole, and it has not indicated that a mandatory weapons conviction will affect parole eligibility. *See, e.g.,* S.C.Code Ann. § 16–3–20(A) (Supp.2008) (holding a person convicted of murder with aggravating circumstances is not eligible for parole); S.C.Code Ann. § 16–11–330(A) (2003) (providing that a person convicted of committing a robbery while armed with a deadly weapon must be sentenced to a mandatory minimum of ten years up to a maximum of thirty years, and the person will not be parole eligible until he or she has served at least seven years).

Because there is no indication in section 16–23–490 that the General Assembly intended the mandatory five-year sentence to completely negate any possibility of parole on other parolable offenses, we conclude the Department's interpretation of section 16–23–490 was erroneous given its decision amounts to

a denial of parole eligibility for an offense the General Assembly has determined is eligible for parole.[7]

## CONCLUSION

Based on the terms of section 16–23–490 and the respective roles of the General Assembly, the sentencing court, and the Department, we hold the ALC correctly concluded that the Department erred in its determination of Major's parole eligibility. We modify the ALC's order to the extent the ALC based its decision solely on the Department's erroneous interpretation of the sequence of Major's sentences. Accordingly, the decision of the ALC is

**AFFIRMED AS MODIFIED.**

WALLER, J., concurs. TOAL, C.J., concurring in a separate opinion. PLEICONES, J., dissenting in a separate opinion in which KITTREDGE, J., concurs.

Chief Justice TOAL.

Although I concur with the majority opinion, I write separately to address the dissent's interpretation of *State v. Atkins*, 303 S.C. 214, 399 S.E.2d 760 (1990). The dissent is correct to observe that we recognized in *Atkins* the logical impossibility of aggregating multiple life sentences. However, the dissent errs in failing to extend that logic to the present case. It is just as much a logical impossibility to aggregate multiple life sentences as it is to aggregate a life sentence with *any* other sentence. Moreover, the lesson from *Atkins* as applied to the present case is that there is no sentence greater than life. Whether aggregated to a five year sentence or a second life sentence, the ultimate time served remains the same. Accordingly, I believe *Atkins* controls the inquiry in

---

7. Interestingly, service of the five-year mandatory, no-parole sentence is not always required. *See* S.C.Code Ann. § 16–23–490(B) (2003) ("Service of the five-year sentence is mandatory unless a longer mandatory minimum term of imprisonment is provided by law for the violent crime. The court may impose this mandatory five-year sentence to run consecutively or concurrently.").

Major received a mandatory-minimum sentence which exceeded five years. Thus, he is not necessarily required to serve the no-parole, five-year sentence. If he is not required to serve it, then we question why it should prevent parole eligibility on an otherwise parolable offense.

the present case, and stands for the proposition that a life sentence may not be aggregated with another sentence so as to affect parole eligibility where statute does not so provide.

Justice PLEICONES.

I respectfully dissent. In my view, the sentence at issue here is unambiguous and not subject to interpretation. Where a trial judge imposes two sentences, only one of which is denominated "consecutive," it of necessity follows the other. Moreover, while I agree that a judicial officer is not empowered to determine whether parole will be granted, I fundamentally disagree with the suggestion that a judge cannot structure a sentence in such a way that the defendant is never eligible to be considered for parole. In order to find that the Legislature intended such a result where a defendant is convicted of both a violent offense and of using a weapon in the commission of that offense, one need look no further than S.C.Code Ann. § 16–23–490(B) (2003), which specifically authorizes the judge to make the five year weapons sentence consecutive.

In interpreting sentences, the Department looks to the sentences imposed, not to the statutes. Moreover, only if there is an ambiguity in the sentences, must the Department or the court ascertain the intent of the judge, not, as the majority suggests, the intent of the parties. Finally, while certain parole eligibility determinations are statutorily committed to the Department,[8] as is the decision whether to grant parole,[9] there is no authority for the statement that a judge violates the separation of powers doctrine when he structures a sentence so that an otherwise parole-eligible defendant will never receive a hearing before the Board. *See* cases collected in *People v. Montgomery*, 669 P.2d 1387 (Colo.1983) (no separation of powers issue in sentence structuring).

Finally, I read *Mims v. State*, 273 S.C. 740, 259 S.E.2d 602 (1979) to hold that where a defendant receives consecutive sentences, they are to be "aggregated," i.e. added together, in

---

8. *E.g.*, whether multiple violent offenses are part of a continuous course of conduct. S.C.Code Ann. § 24–21–640 (2003); *State v. McKay*, 300 S.C. 113, 386 S.E.2d 623 (1989).

9. S.C.Code Ann. § 24–21–30 (2003).

472

order to determine the date upon which the defendant first becomes parole eligible. In *State v. Atkins*, 303 S.C. 214, 399 S.E.2d 760 (1990), the Court simply recognized the logical impossibility of aggregating multiple life sentences. Here, we are asked to aggregate a life sentence and a consecutive five year sentence, a sentence which the General Assembly specified could, in the sentencing judge's discretion, be made consecutive. The result is admittedly harsh,[10] and perhaps not desirable, however, it is not an unlawful sentence.

I would reverse the order of the ALC.

KITTREDGE, J., concurs.

---

**10.** Respondent committed murder in 1990, at which time the possible sentences for murder were death, life with twenty year parole eligibility, or life with thirty year eligibility where an aggravating circumstance is found but a death sentence not imposed. § 16–3–20 (Supp.1990). He received a "twenty-year" life sentence. In the weapons statute, the General Assembly has specified that the five year weapons sentence "does not apply" in only three situations: where the defendant is sentenced to death or to life without the possibility of parole, § 16–23–490(A), or where a mandatory minimum sentence in excess of five years is required for the violent offense itself. § 16–23–490(B). A person convicted of murder under the current statute would not be subject to the five year weapons sentence since the three sentencing choices currently are death, life without the possibility of parole, or a mandatory minimum thirty year sentence. § 16–3–20(A). Respondent, however, is not subject to the "mandatory minimum" exemption.