# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Richard J. Creswick, Petitioner,

v.

The University of South Carolina and Alan Wilson in his official capacity as Attorney General, Respondents.

Appellate Case No. 2021-000833

---

## ORIGINAL JURISDICTION

---

Opinion No. 28053
Submitted August 11, 2021 – Filed August 17, 2021

---

## JUDGMENT DECLARED

---

Richard A. Harpootlian and Christopher Phillip Kenney, of Richard A. Harpootlian, PA, of Columbia, for Petitioner.

Vordman Carlisle Traywick III and Robert E. Stepp, of Robinson Gray Stepp & Laffitte, LLC, of Columbia, for Respondent University of South Carolina.

Attorney General Alan McCrory Wilson, Solicitor General Robert D. Cook, and Deputy Solicitor General J. Emory Smith Jr., all of Columbia, for Respondent Attorney General Alan Wilson.

---

**PER CURIAM:** Petitioner, a professor at the University of South Carolina (the University), seeks a declaration in this Court's original jurisdiction that Proviso 117.190 of the 2021-2022 Appropriations Act[1] does not prohibit a universal mask mandate at the University and asks the Court for expedited consideration of this matter. Both the University[2] and the Attorney General agree with the requests for this Court's acceptance of this case in its original jurisdiction and expedited review. Because this matter involves a question of significant public interest that must be decided before classes resume this week, we accept the matter in our original jurisdiction and expedite its consideration. *See* Rule 245(a), SCACR (explaining this Court may hear matters in its original jurisdiction if the public interest is involved, or if special grounds of emergency or other good reasons exist); *Key v. Currie*, 305 S.C. 115, 116, 406 S.E.2d 356, 357 (1991) (holding only if an extraordinary reason, such as a question of significant public interest or an emergency, exists will this Court determine a matter in its original jurisdiction). We dispense with further briefing, find oral argument would not be helpful, and declare Proviso 117.190 does not prohibit a universal mask mandate.

On July 30, 2021, Dr. Harris Pastides, Interim President of the University, announced that face coverings would be required for all students, faculty, and staff at all times inside all University buildings except a student's own dorm room, a private office, and when eating inside campus dining facilities. On August 2, 2021, the Attorney General sent a letter to Dr. Pastides opining that the University's universal facemask mandate violated Proviso 117.190. Accordingly, Dr. Pastides issued a statement on August 3, 2021, indicating that in light of the Attorney General's opinion, the University would not require facemasks except in the University's health care facilities and campus public transportation. However, the statement strongly encouraged the use of facemasks indoors unless in a student's own dorm room, in a private office, or eating inside campus dining facilities.

Proviso 117.190 provides:

> (GP: Masks at Higher Education Facilities) A public institution of higher learning, including a technical college, may not use any funds appropriated or authorized pursuant to this act to require that its students have received the COVID-19 vaccination in order to be

---

[1] https://www.scstatehouse.gov/sess124_2021-2022/appropriations2021/tap1b.htm#s117.

[2] Although the University is named as a defendant in this lawsuit, it is not actually adverse to any of the parties and, in its return, states that it defers to this Courts' interpretation of Proviso 117.190.

present at the institution's facilities without being required to wear a facemask. This prohibition extends to the announcement or enforcement of any such policy.

In his letter to Dr. Pastides, the Attorney General stated,

> With respect to masks, Proviso 117.190 is ambiguous, to be sure. One reasonable interpretation is to prohibit discrimination by requiring masks for the unvaccinated. Under this interpretation, a uniform mask requirement does not violate the proviso. Based upon this reading, we understand the University has now imposed a mask requirement "inside all campus buildings" with certain exceptions.
>
> Such a policy, however, is likely not consistent with the intent of the Legislature. It is our understanding that Proviso 117.190, while inartfully worded, was intended to prohibit the mandatory wearing of masks, as reflected in its use of the language "without being required to wear a facemask." Our state Supreme Court has advised that "courts are not confined to the literal meaning of a statute where the literal import contradicts the real purpose and intent of the lawmakers." *Wade v. State*, 348 S.C. 255, 259, 559 S.E.2d 843, 845 (2002). Given the legislative intent, we are constrained to construe Proviso 117.190 as prohibiting a mask mandate such as the University has imposed.

In his return, the Attorney General asserts this matter does not present a justiciable controversy. We reject this assertion. There is no question that the University withdrew its mask mandate based on the letter from the Attorney General, and the University has now clearly indicated it will defer to our interpretation of the proviso in question. Under these circumstances, this controversy is clearly justiciable.

Contrary to the Attorney General's position that this matter presents a political question, we hold this action involves solely a question of statutory interpretation. The primary rule of statutory construction is to ascertain and give effect to the intent of the General Assembly. *S.C. Pub. Int. Found. v. Calhoun Cnty. Council*, 432 S.C. 492, 497, 854 S.E.2d 836, 838 (2021); *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). The first question to be asked when interpreting a statute is whether the statute's meaning is clear on its face. *Kennedy v. S.C. Ret. Sys.*, 345 S.C. 339, 346, 549 S.E.2d 243, 246 (2001). If a statute's language is

plain, unambiguous, and conveys a clear and definite meaning, there is no need to employ the rules of statutory interpretation, and this Court must apply the statute according to its literal meaning. *Miller v. Aiken*, 364 S.C. 303, 307, 613 S.E.2d 364, 366 (2005). Under the plain meaning rule, this Court has no right to search for or impose another meaning or resort to subtle or forced construction to change the scope of a clear and unambiguous statute. *Town of Mt. Pleasant v. Roberts*, 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011); *State v. Sweat*, 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010); *Cain v. Nationwide Prop. & Cas. Ins. Co.*, 378 S.C. 25, 29–30, 661 S.E.2d 349, 351–52 (2008). Only where the language of an act gives rise to doubt or uncertainty as to legislative intent may this Court search for that intent beyond the borders of the act itself. *Smith v. Tiffany*, 419 S.C. 548, 556, 799 S.E.2d 479, 483 (2017). The best evidence of legislative intent is the text of the statute. *Wade v. State*, 348 S.C. 255, 259, 559 S.E.2d 843, 844 (2002); *Hodges*, 341 S.C. at 85, 533 S.E.2d at 581.

The language of Proviso 117.190 is not ambiguous as to the point in question—whether the proviso prohibits a universal mask mandate. Nothing in the proviso manifests the General Assembly's intent to prohibit all mask mandates at public institutions of higher learning. Instead, the proviso clearly prevents state-supported institutions of higher education from using funds from the 2021-2022 appropriations to fund efforts requiring only unvaccinated individuals to wear facemasks. Nothing in the title or text of the proviso prohibits a universal mask mandate at a public institution of higher learning that applies to all students, faculty, and staff equally, whether vaccinated or unvaccinated. In fact, the proviso implicitly contemplates there could be a universal mask mandate, but its terms prohibit only discrimination against unvaccinated individuals by requiring them to wear masks when vaccinated individuals are exempt from that requirement. Despite the fact that the proviso is, as stated by the Attorney General, "inartfully worded" and "very poorly written," the proviso clearly does not not prohibit a universal mask mandate.

Further, the Attorney General's contention that construing Proviso 117.190 along with other provisos concerning COVID-19 vaccinations and facemasks somehow evidences the legislative intent for Proviso 117.190 to prohibit universal mask mandates at state-funded colleges and universities is specious. We note Proviso 1.108 demonstrates the General Assembly is capable of drafting a provision prohibiting all mask mandates by stating:

> (SDE: *Mask Mandate Prohibition*) No school district, or any of its schools may use any funds appropriated or authorized pursuant to this

act to require that its students and/or employees wear a facemask at any of its education facilities. This prohibition extends to the announcement or enforcement of any such policy.[3]

(emphasis added). In contrast to Proviso 117.190, Proviso 1.108 clearly evinces the General Assembly's intent to prohibit the use of state funds to require any mask mandate in public K-12 schools. The fact that Proviso 117.190 uses different language than Proviso 1.108 leaves little doubt that Proviso 117.190 was not intended to prohibit all mask mandates at public institutions of higher education, but only, as its terms specifically provide, mask mandates for the unvaccinated.

As to the Attorney General's insistence that subsequent statements by individual legislators evidence the legislative intent to ban all masks mandates, this Court has held the Court may not look to the opinions of legislators or others concerned in the enactment of the law—expressed subsequent to enactment—to ascertain the intent of the legislature. *Kennedy*, 345 S.C. at 353–54, 549 S.E.2d at 250 (quoting *Greenville Baseball, Inc. v. Bearden*, 200 S.C. 363, 371, 20 S.E.2d 813, 817 (1942)); *Bowaters Carolina Corp. v. Smith*, 257 S.C. 563, 572, 186 S.E.2d 761, 764 (1972) (holding the testimony of members of the legislative delegation who authored the statute as to its meaning was inadmissible). It is well established that courts will disregard the subsequently expressed opinions of individual legislators as to the intent of the legislature as a whole when construing a statute. *See, e.g.*, *Bread Pol. Action Comm. v. Fed. Election Comm'n*, 455 U.S. 577, 582 n.3 (1982) ("*[P]ost hoc* observations by a single member of Congress carry little if any weight." (quoting *Quern v. Mandley*, 436 U.S. 725, 736 n.10 (1978))); *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 193 (1978) (noting statements of Appropriations Committee members "represent only the personal views of these legislators," and, "however explicit, [they] cannot serve to change the legislative intent of Congress expressed before the Act's passage" (alteration in original) (quoting *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 132 (1974))); 419 U.S. at 132 (holding post-passage remarks of legislators cannot serve to change the legislative intent of Congress expressed before the Act's passage as those statements represent only the personal views of the legislators); *Pa. Dep't of Pub. Welfare v. United States*, 781 F.2d 334, 341 n.10 (3d Cir. 1986) ("[A] post hoc statement of a single legislator, even of the bill's author, is not entitled to probative weight in the determination of legislative intent." (citations omitted)); *Cummings v. Mickelson*, 495 N.W.2d 493,

---

[3]https://www.scstatehouse.gov/query.php?search=DOC&searchtext=mask&category=BUDGET&year=2021&version_id=7&return_page=&version_title=Appropriation%20Act&conid=36818960&result_pos=0&keyval=46115&numrows=10

499 n.7 (S.D. 1993) (holding the views of individuals involved with the legislative process as to intent is of no assistance in construing statutory provisions because: (1) it is the intent of the legislature that is sought, not the intent of the individual members; and (2) it is "universally held" that "evidence of a . . . draftsman of a statute is not a competent aid to a court in construing a statute" (quoting *Coop. Wool Growers of S.D. v. Bushfield*, 8 N.W.2d 1, 3 (1943))); *Cogan v. City of Wheeling*, 274 S.E.2d 516, 518 (W. Va. 1981) (holding a court cannot consider the individual views of members of the legislature offered to prove the intent and meaning of a statute after its passage and after litigation has arisen over its meaning and intent). *See generally* Norman J. Singer & Shambie Singer, *Statutes and Statutory Construction* § 48.16 (7th ed. 2014) (citing cases in numerous jurisdictions holding courts should not consider testimony about legislative intent by members of the legislature that enacted a statute). Accordingly, even if the proviso were ambiguous, we would not consider any post-passage statements by individual legislators or groups of legislators as to the intent of the proviso.

Because the language of the proviso is clear and unambiguous as to whether the proviso prohibits a universal mask mandate, we need not resort to rules of statutory construction to determine legislative intent. *See Smith*, 419 S.C. at 556, 799 S.E.2d at 483 (holding only where the language of a statute gives rise to doubt or uncertainty as to legislative intent may this Court search for that intent beyond the borders of the act itself); *Miller*, 364 S.C. at 307, 613 S.E.2d at 366 (holding where a statute's language is plain, unambiguous, and conveys a clear and definite meaning, there is no need to employ the rules of statutory interpretation, and this Court must apply the statute according to its literal meaning). We declare the terms of Proviso 117.190 clearly and unambiguously prohibit a state-supported institution of higher education from discriminating against unvaccinated students, faculty, and staff by requiring them to wear masks. The proviso does not prohibit a universal mask mandate.[4]

**JUDGMENT DECLARED.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW, and JAMES, JJ., concur.**

---

[4] In reaching this conclusion, we are simply construing the proviso as it is written. Our holding is not an approval or disapproval of a mandate, nor is it an approval or disapproval of an attempt by the General Assembly to prohibit a mandate.